Shirley A. YAMAGUCHI,
Plaintiff–Appellant,

v.

UNITED STATES DEPARTMENT OF THE AIR FORCE, Defendant,

and

Sheila E. Widnall, Officially as Secretary of the Air Force, Defendant–Appellee.

No. 95–17266.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 11, 1996.

Decided April 1, 1997.

---

5. The request of the Higashiguchis for attorneys fees on appeal pursuant to Haw.Rev.St. § 607–15.5 is denied.

William Tagupa, Honolulu, HI, for plaintiff-appellant.

Major Maura T. McGowen, Honolulu, HI, for defendant-appellee.

Before: BETTY B. FLETCHER, CHARLES WIGGINS, and T. G. NELSON, Circuit Judges.

FLETCHER, Circuit Judge:

Shirley Yamaguchi, a civilian Air Force employee, is suing her employer, the Secre-

tary of the Air Force, under Title VII for sexual harassment and sex discrimination for failure to protect her and respond adequately to the extreme sexual harassment she suffered at the hands of a uniformed co-worker.

Yamaguchi filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment and sex discrimination. The EEOC found that she had been subjected to sexual harassment in her workplace but that the employer was not liable because it took adequate remedial measures. Yamaguchi then filed a complaint in district court alleging, inter alia, sexual harassment and sex discrimination and seeking equitable relief and compensatory damages. She also requested a jury trial on the damages claims.

The district court dismissed Yamaguchi's sex discrimination claim for failure to exhaust administrative remedies. The court then struck Yamaguchi's requests for compensatory damages and a jury trial on her sexual harassment claim because the court found that all of the alleged sexual harassment occurred prior to November 21, 1991, the effective date of the Civil Rights Act of 1991 ("CRA"). It also denied both the defendant's and Yamaguchi's motions for partial summary judgment on the issue of the defendant's liability for Clark's (a co-worker's) sexual harassment.

We have jurisdiction under 28 U.S.C. § 1292. We must decide (1) whether Yamaguchi exhausted the administrative remedies for her sex discrimination claim; (2) whether she was entitled to compensatory damages and a jury trial for her allegations of sex discrimination and sexual harassment; and (3) whether there are material factual disputes as to whether the employer took adequate remedial measures in response to the sexual harassment. Because Yamaguchi included allegations of sex discrimination in her EEOC charge, we reverse the grant of summary judgment for the employer on the sex discrimination claim. Further, because Yamaguchi has alleged sexual harassment perpetrated after November 21, 1991, we reverse the grant of the employer's motion to strike Yamaguchi's request for compensatory damages and a jury trial. Finally, because

factual issues remain for trial, we affirm the district court's refusal to grant summary judgment to the employer on the issue of its liability.

## I. BACKGROUND

Shirley Yamaguchi served as a Chief of the Management Analysis and Support Division at Hickam Air Force Base in Hawaii where she was employed as a civilian employee of the United States Air Force. When she encountered problems on the base's automated system, Yamaguchi was instructed to seek support from, among others, Senior Master Sergeant Clark who provided informal, on-the-job training. Clark had no authority over Yamaguchi. In fact they both shared the same commander, Lt. Col. Charles Elliot.

In her district court complaint, Yamaguchi makes the following allegations. In December 1990, Clark began to sexually harass Yamaguchi by making inappropriate jokes and comments and sending her unwanted notes, gifts and e-mail messages. Although she repeatedly asked him to stop, Clark continued to give her inappropriate gifts and cards and stare at her during work. On one occasion, he attempted to kiss her. He made sexual gestures and remarks about her body, perfume, and clothing and about other women in the workplace (e.g., "Cheryl has a nice ass."), and even about his own wife (e.g., "my wife's nipples are perfect"). Clark began monopolizing Yamaguchi's time at work and his behavior made it very difficult for Yamaguchi to do her job.

The harassment became increasingly serious. On November 8, 1991, Clark allegedly came to Yamaguchi's apartment and told her he was having car problems and needed to use her telephone. Once inside, he allegedly tied her up, gagged her and raped her. He threatened to retaliate against her if she reported what happened.

Yamaguchi heeded Clark's warning initially and did not report the incident. She tried to avoid him altogether. However, as she came to realize that the situation was unbearable and that she was under terrible stress she contacted the EEO counselor at Hickam AFB and orally complained about

Clark's conduct at work. On the same day, December 23, 1991, she spoke with the Deputy of her group about Clark's conduct. She did not report the alleged rape at that time.

The defendant contends that it adequately responded to Yamaguchi's complaint. Although Yamaguchi's immediate supervisor, was on leave at the time she originally complained, Col. Deligans, Elliot's immediate superior officer, was informed of the allegations. He ordered Clark not to have any contact with Yamaguchi except on official business. On January 7, 1992, Deligans moved Clark from the contracting center facilities where Yamaguchi worked to another building. On January 30, 1992, Clark was verbally ordered not to enter the building where Yamaguchi worked. This order was reiterated in writing on February 25, 1992 and Clark was ordered to turn over his key to the building. Pursuant to a request by Clark for early reporting to his new assignment, on April 27, 1992, Clark was reassigned to a base on the mainland.

Beginning in February 1992, Yamaguchi's work attendance became erratic due to leave for mental problems which she asserts resulted from the harassment and the attack. The absences continued until September 13, 1992. During this time, Yamaguchi submitted affidavits regarding her condition. In August, she submitted a letter from her psychologist stating that Yamaguchi was ready to return to work but only in a different location. On September 14, 1992, she returned to work in a new position in another office. Although this position was a lower grade, she retained the grade and pay of her original position.

In May 1993, Yamaguchi's work attendance once again became erratic. On May 25, 1993, she stopped reporting for work altogether and 3 days later she submitted a letter from her psychologist stating that, although Yamaguchi was able to work, she could only do so in a different department and not under Elliott's supervision.

On June 15, 1993, Yamaguchi reported that she would not be able to report for duty in any capacity at Hickam AFB. On June 15, 1993, Elliott sent her a written request for updated medical information concerning her inability to work. After no response was received, he mailed Yamaguchi a Notice of Proposed Termination for Disability and provided her 10 days from receipt of the notice to respond. Having received no response, on September 10, 1993, Col. Deligans, the deciding official, terminated Yamaguchi's employment due to her inability to perform the essential functions of her work.

On February 28, 1992, Yamaguchi received a final interview on her informal complaint with the EEO counselor. On March 19, 1992, she filed a formal individual complaint with the Air Force EEO counselor alleging hostile work environment (sexual harassment) and sex discrimination. On December 2, 1992, the Air Force EEO investigator found that Yamaguchi had established that she had been subjected to a hostile work environment but concluded that there was no actionable discrimination because management took proper remedial action.

On May 16, 1994, at an EEOC administrative hearing on Yamaguchi's sex discrimination and sexual harassment claims, the employer agreed to accept the EEO investigator's findings that Clark subjected Yamaguchi to a hostile work environment. The EEOC adopted the investigator's findings that Yamaguchi established a prima facie case of hostile work environment sexual harassment, but held that there was no actionable Title VII violation since management took corrective action and had an effective complaint procedure.

On October 5, 1994, Yamaguchi filed the current action against the Secretary of the Air Force alleging 1) sexual harassment, 2) sex discrimination, 42 U.S.C. § 2000e–2, and 3) disability discrimination, 29 U.S.C. § 791. The defendant moved for summary judgment. The district court granted partial summary judgment to the employer and dismissed the sex discrimination and disability discrimination counts because Yamaguchi failed timely to exhaust her administrative remedies on these counts. Although the district court denied the defendant's summary judgment motion on the sexual harassment claim, it granted the defendant's motion to strike Yamaguchi's request for compensatory

damages and a jury trial for conduct which occurred prior to November 21, 1991. In a subsequent order, the district court concluded that, because all of the alleged harassment occurred prior to November 21, 1991, Yamaguchi's requests for compensatory damages and a jury trial should be struck entirely. A final order dismissing these claims was entered pursuant to Federal Rule of Civil Procedure 54(b). Yamaguchi timely appealed.

On appeal, Yamaguchi claims that she was entitled to a jury and to compensatory damages for sexual harassment and sex discrimination perpetrated against her after November 21, 1991. She also appeals the district court's denial of her motion for partial summary judgment on the issue of employer liability for the sexual harassment.

## II. SEX DISCRIMINATION

■ The district court granted the employer's motion to dismiss Yamaguchi's sex discrimination claim because it concluded that Yamaguchi failed to exhaust her administrative remedies and because the claim was insufficiently alleged and lacked sufficient evidentiary support. A dismissal for failure to state a claim is a ruling on a question of law reviewed de novo. *Lewis v. Telephone Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir.1996). "A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of her claim that would entitle her to relief." *Id.*

### A. *Exhaustion Requirement*

■ The district court found that Yamaguchi's "claim of disparate treatment was not raised in her original EEOC complaint." To establish federal subject matter jurisdiction over an employment discrimination claim, a plaintiff must have raised that claim or a "like and reasonably related" claim in an administrative action. *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir.1994). The EEOC charge must be construed "with the utmost liberality." *Id.* The district court erred when it concluded that Yamaguchi's EEOC charge did not include allegations of sex discrimination.

In her EEOC charge, Yamaguchi alleged sex discrimination on the basis of her gender *and* sexual harassment "continuing almost daily, including March." In the text of the complaint she described in the first paragraph conduct which constitutes sexual harassment by Clark. In the second paragraph, however, she alleged that she "repeatedly complained and reported the harassment to both Deputy Director James Watanabe and my commander Lt. Col. Elliot who have not taken adequate measures and Lt. Col. Elliot has since begun *to harass and threaten me by denigrating my job performance and my complaints, which continues to this day*." These allegations presumably go to her sex discrimination claim. While less than clear and complete, her charge satisfies the liberal requirement of a "like and reasonably related" administrative claim.

■ In its investigation and decision, the EEOC only addressed Yamaguchi's sexual harassment allegations against Clark, not her claim of sex discrimination. The EEOC's failure to address the sex discrimination claim, however, is irrelevant to whether Yamaguchi exhausted her administrative remedies on this issue. The district court has subject matter jurisdiction over allegations of discrimination that either "fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination." *Farmer Bros.*, 31 F.3d at 899 (internal quotations omitted). An investigation of Yamaguchi's sex discrimination charge could "reasonably [have been] expected to grow out of" her EEOC charge. The fact that no such investigation took place does not preclude federal court jurisdiction over this claim.

### B. *Insufficient Allegations*

■ The district court also found that Yamaguchi's sex discrimination claim was insufficiently alleged. Rule 8(f) of the Federal Rules of Civil Procedure requires a liberal reading of complaints. "[A] dismissal must be reversed unless it appears to a certainty that the plaintiff is entitled to no relief under any set of facts that could be proved." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866

F.2d 1149, 1155 (9th Cir.1989). Our system of notice pleading "do[es] not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Instead, "all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (footnote omitted) (quoting Fed.R.Civ.P. 8(a)(2)). "[A] complaint should not be dismissed for failure to state a claim unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45–46, 78 S.Ct. at 102 (footnote omitted) (emphasis added). Thus, these liberal pleading rules only require that the averments of the complaint sufficiently establish a basis for judgment against the defendant. *Danning v. Lavine,* 572 F.2d 1386, 1388–89 (9th Cir.1978).

We cannot conclude beyond doubt that Yamaguchi failed to plead facts which would entitle her to relief on her claim of sex discrimination against her employer. In her complaint to the district court, Yamaguchi alleged that Elliot failed to discipline Clark and that he verbally blamed Yamaguchi for the EEO allegations. Yamaguchi was reduced to a lesser position and eventually terminated by Elliot. According to the complaint, these actions among others constitute disparate treatment sex discrimination. Although the complaint was inartfully crafted, in light of the liberal pleading standards, Yamaguchi's complaint presents an adequate claim of sex discrimination.

### C. *Insufficient Evidence*

■ The final reason proffered by the district court for dismissing Yamaguchi's sex discrimination claim is that it was not supported by sufficient evidence. An inquiry into the adequacy of the evidence is improper when deciding whether to dismiss for failure to state a claim. *See Campanelli v. Bockrath,* 100 F.3d 1476, 1484 (9th Cir.1996). In considering a motion to dismiss, the court must accept as true the plaintiff's allegations

contained in the complaint and view them in the light most favorable to her. *Scheuer v. Rhodes,* 416 U.S. 232, 235, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Yamaguchi alleged sex discrimination in her complaint. As in her EEOC charge, these allegations were separate and apart from her allegations of sexual harassment by Clark. Because Yamaguchi alleged sex discrimination in her EEOC charge and in her complaint, the district court erred when it dismissed this claim. We therefore reverse and remand to the district court for further proceedings.

### III. COMPENSATORY DAMAGES AND JURY TRIAL

■ The district court granted the defendant's motion to strike Yamaguchi's prayer for compensatory damages and a jury trial for her claims of sex discrimination and sexual harassment. Prior to the Civil Rights Act of 1991(CRA) plaintiffs in Title VII cases were limited to equitable remedies. *Landgraf v. USI Film Products,* 511 U.S. 244, 252, 114 S.Ct. 1483, 1490, 128 L.Ed.2d 229 (1994). The CRA § 102 expanded the relief available in cases of intentional discrimination to include compensatory and punitive damages. 42 U.S.C. § 1981a(a)(1) & (b). The CRA also provided for the right to a jury trial in cases where the plaintiff seeks compensatory or punitive damages. 42 U.S.C. § 1981a(c). These new provisions, however, only apply to conduct which occurred after the effective date of the CRA, November 21, 1991. *Landgraf,* 511 U.S. at 252, 114 S.Ct. at 1490.

Yamaguchi sought compensatory damages for sexual harassment, sex discrimination, and disability discrimination which occurred after November 21, 1991. The district court dismissed Yamaguchi's sex discrimination, see Section II *infra,* and disability claims. It then concluded that all of the sexual harassment occurred prior to the effective date of the CRA and therefore Yamaguchi is not entitled to compensatory damages or a jury on any of her claims.

■ Although ordinarily a ruling on a motion to strike is reviewed for an abuse of

discretion, *Golden Gate Hotel Ass'n v. City and County of San Francisco,* 18 F.3d 1482, 1485 (9th Cir.1994), because the district court grant of this motion effectively dismissed all of plaintiff's legal claims we treat this ruling as a dismissal for failure to state a claim. Such a determination is reviewed de novo. *Lewis,* 87 F.3d at 1545.

## A. Sexual Harassment Claim

▄▄▄ In its order striking Yamaguchi's claim for compensatory damages and a jury trial on her claim of sexual harassment, the district court concluded that all of the alleged harassment occurred prior to the enactment date of the CRA. In so doing, the court failed to consider the following allegations included in Yamaguchi's original district court complaint:

> By the end of November [Yamaguchi] was forced to tell Clark that it would be better if she left the office.... Yamaguchi was also still hunted down by Clark, such as, *on or about December 10, 1991,* as she was turning off the lights, she saw him coming down the hall. In a panic, she frantically gathered her things and rushed out the building through the side door. As the door was closing behind her, she heard that terrifying voice calling her name. Clark said, "Shirley! Shirley! Shirley! ... wait!.. wait up! ... just remember what I told you, the next time will be worse." Her worst fears were coming true.

Complaint, ¶ 45 (emphasis added).

Although Yamaguchi is not entitled to compensatory damages and a jury trial for Clark's harassing conduct which occurred prior to November 21, 1991 she is so entitled for any conduct which occurred after that date. *See e.g., Goodstein v. Bombardier Capital, Inc.,* 889 F.Supp. 760 (D.Vt.1995) (proof that employer rehired male employees after effective date of CRA and that this rehiring violated Title VII, would be sufficient to bring plaintiffs within coverage of the new Title VII damages provision, even though the provision could not be applied

retroactively to conduct occurring prior to the effective date of the act); *McAdams v. Reno,* 858 F.Supp. 945, 950 n. 8 (D.Minn. 1994). Clark's harassment was a "continuing violation" which began prior to the effective date of the CRA and continued thereafter. *Valentino v. United States Postal Service,* 674 F.2d 56, 65 (D.C.Cir.1982) (to establish a continuing violation, a plaintiff must show "a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the (limitations) period."); *Williams v. Owens–Illinois, Inc.,* 665 F.2d 918, 924 (9th Cir.), cert. denied, 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982).

Because Yamaguchi alleged actual harassing conduct which occurred after the effective date of the CRA, hers is a case of a continuing violation. Thus, she is entitled to pursue compensatory damages and a jury trial for post-November 21, 1991 conduct.

## B. Sex Discrimination Claim

As discussed in Section II, *infra,* the district court erred in dismissing Yamaguchi claim of sex discrimination. Therefore, she is entitled to a jury trial and to pursue compensatory damages for sex discrimination which occurred after November 21, 1991.

## IV. EMPLOYER LIABILITY

▄▄▄ The district court denied Yamaguchi's motion for partial summary judgment on the issue of the defendant's liability for sexual harassment perpetrated by Clark. Once an employer becomes aware of co-worker sexual harassment, the employer must take adequate remedial measures in order to avoid liability for the harassment. These measures must include some form of disciplinary action. Yamaguchi contends that the defendant took no disciplinary measures against Clark thus the district court erred when it failed to grant her motion for partial summary judgment.

▄▄▄ A grant of summary judgment is reviewed de novo. *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996). The appellate court must determine, viewing the evidence in the light most favorable to the

nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

 An employer is liable for a co-worker's sexual harassment only if, after the employer learns of the alleged conduct, he fails to take adequate remedial measures. These measures must include immediate and corrective action reasonably calculated 1) to end the current harassment, and 2) to deter future harassment from the same offender or others. *Fuller v. City of Oakland, Cal.,* 47 F.3d 1522, 1528 (9th Cir.1995) (citing *Ellison v. Brady,* 924 F.2d 872, 882 (9th Cir.1991)). In *Ellison,* this court held that to avoid liability an employer must take at least some form of disciplinary action against a harassing co-worker in order to prevent future workplace sexual harassment. *Intlekofer v. Turnage,* 973 F.2d 773, 777 (9th Cir.1992); *Ellison,* 924 F.2d at 881–82 ("[e]mployers send the wrong message to potential harassers when they do not discipline employees for sexual harassment" and "[e]mployers have a duty to 'express[ ] strong disapproval' of sexual harassment, and to 'develop[ ] appropriate sanction.'" (quoting 29 C.F.R. § 1604.11(f))); *see also Fuller,* 47 F.3d at 1529. Failing to "take even the mildest form of disciplinary action" renders the remedy insufficient under Title VII. *Ellison,* 924 F.2d at 882. The adequacy of the employer's response depends on the seriousness of the sexual harassment. *Id.*

It is undisputed that Yamaguchi was sexually harassed and that the defendant knew of Clark's sexual harassment of Yamaguchi. Thus, the issue on appeal is whether the district court erred in refusing to grant summary judgment to the defendant and in ruling that a genuine issue of material fact exists as to whether the actions taken against Clark satisfy the discipline requirement of *Ellison.* After Yamaguchi complained of sexual harassment, Clark was ordered to have no further contact with her, his work site was changed, and his building key taken away. Clark was no longer permitted into Yamaguchi's building without an escort.

These actions were intended to stop the harassment and, to this end, were presumably adequate. However, the employer's actions must both end the current harassment and discipline the offender. *Ellison,* 924 F.2d at 881. At no time was Clark officially disciplined or reprimanded for his actions nor was possible discipline ever discussed with him by his supervisors. No letter regarding the incidents was placed in his file and the incidents had no effect on his rank or placements.

Yamaguchi contends that "[i]t was not disputed that Appellee failed to discipline Clark (or any other person) after it learned of the unlawful discriminatory conduct...." The district court agreed that the "[d]efendants did not express strong disapproval of Clark's conduct, did not reprimand Clark, did not put him on probation, and did not inform him that repeated harassment would result in severe measures. Clark himself testified that Defendants did not discuss with him the possibility of discipline, however mild or severe, should allegations against him prove to be true." The EEOC Administrative Judge also found that "no disciplinary action was taken ... not even a letter of reprimand...."

According to the defendant, "the unique structure of the military, the methods of discipline ... vary from those commonly employed by the civilian workforce." The defendant contends that, in the military context, the actions taken against Clark should be considered disciplinary because they "are steps which carry serious implications." We agree with the district court that, viewing the evidence in the light most favorable to the defendant, a factual dispute remains as to whether the actions taken in response to Yamaguchi's complaint were adequate remedial measures. Therefore, we affirm the district court's denial of summary judgment on the issue of employer liability.

 The defendant argues that this court must "be extremely reluctant to interfere with the military's exercise of discretion, especially when adjudicating matters involving discipline, morale, composition of the force and personnel matters." We agree. However, Yamaguchi was a civilian employee of the U.S. Air Force. As such, she is entitled to pursue a claim against her employer

for sexual harassment under Title VII. Although uniformed members of the military cannot bring a Title VII cause of action, *Gonzalez v. Department of Army,* 718 F.2d 926, 928–29 (9th Cir.1983), civilian employees of the Army, Navy or Air Force[1] have the same right to pursue Title VII actions as other federal employees.[2] In order to adjudicate properly the adequacy of a military employer's response to sexual harassment of a civilian employee by a uniformed co-worker, a court must determine whether the military employer adequately disciplined the offending employee. It would contravene the goals of Title VII to allow a military employer to avoid liability for sexual harassment of a civilian employee by a uniformed co-worker by simply invoking its right to unlimited discretion as to whether or not to discipline its soldiers. The intrusion by the courts is minimal. They do not purport to direct or impose discipline on military personnel, only to determine whether the civilian employee is entitled to damages because of the employer's failure to discipline.

## V. CONCLUSION

The district court erred in dismissing Yamaguchi's claim of sex discrimination against her employer. Further, the district court erred in striking her prayer for compensatory damages and a jury trial on her claims of sex discrimination and sexual harassment. However, the district court properly denied Yamaguchi's motion for partial summary judgment on the issue of employer liability.

AFFIRMED in part; REVERSED in part; and REMANDED.

---

1. Section 717 of Title VII, 42 U.S.C. § 2000e–16(a) provides, in relevant part, that "[a]ll personnel actions affecting employees ... in military departments ... shall be made free from any discrimination based on race, color, religion, sex or national origin." The term employees in "military departments" has been interpreted to include civilian employees of the military branches. *Gonzalez,* 718 F.2d at 928. Congress recognized the difference between the uniformed personnel and civilian employees when it drafted section 717 to apply specifically to "military departments." *Id.*

2. A federal employee may seek enforcement of a favorable EEOC order in district court. *Morris v. Rice,* 985 F.2d 143, 145 (4th Cir.1993). The Civil Rights Act of 1972 provides that final decisions of the EEOC are binding on federal agencies. *Id.* at 145. A district court may therefore enforce such an order without requiring de novo review of the merits. *Id.* A plaintiff is able to accept as binding the EEOC's findings.