Margaret PACHECO, Plaintiff–
Appellant,

v.

NEW LIFE BAKERY, INC.,
Defendant–Appellee.

No. 97–17039.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 1999

Filed July 28, 1999

Mark Mausert, Reno, Nevada, for the plaintiff-appellant.

Todd Russell, Allison, MacKenzie, Hartman, Soumbenoitis & Russell, Carson City, Nevada, for the defendant-appellee.

Before: WOOD, Jr.,[*] THOMPSON, and THOMAS, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge:

Margaret Pacheco appeals the district court's 1997 grant of summary judgment in favor of her former employer, New Life Bakery, Inc. ("New Life"), dismissing her claims of sexual harassment and hostile work environment in violation of Title VII. Pacheco contends that the district court erred in concluding that there were no genuine issues of material fact as to (1) New Life's liability as employer and (2) her claim of retaliatory discharge.

We have jurisdiction under 28 U.S.C. § 1291. We must reverse the district court's judgment in light of the Supreme Court's decisions in *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). *Burlington* and *Faragher* establish an employer's vicarious liability in cases of harassment by a supervisor or one in a position of authority. 118 S.Ct. at 2270, 2290. These cases came too late to be of guidance to the district court. We therefore reverse the grant of summary judgment in favor of New Life and remand to the district court for further proceedings in accordance with this opinion.

## BACKGROUND

### A. Factual Background

New Life is a private, closely-held family corporation with approximately 80 employees, which had been doing business for more than twenty-five years. Pacheco was employed by New Life for a little over four months as a receptionist. Kim Walters was her supervisor. Walters is an officer and one of the family co-owners of New Life. Walters is responsible for all of the policies and procedures at New Life, having a great deal of input into personnel procedures in particular. Walters affirmed that the only company material distributed to employees which referred to sexual harassment was a single sentence found in New Life's eight-page policy booklet, which states, "[New Life] will not allow any sexual, religious, political, racial or ethnic slur, sexual advances or misconduct." Walters admitted this statement was not adequate to fully state company policy as to sexual harassment. She also stated that, although she holds regular monthly meetings with employees covering company rules and regulations, she was not sure if she had ever addressed sexual harassment policy at a meeting, and knew for certain she had never disseminated any specific material concerning sexual harassment at any of the meetings.[1]

---

[*] Honorable Harlington Wood, Jr., Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. Walters claimed that New Life had a safety training pamphlet that discussed sexual harassment, which described what would be considered acceptable and non-acceptable

Pacheco alleges that she was sexually harassed by David Marson. Marson, as a family member, is an officer of the corporation with 24% ownership of the company, and serves as New Life's production manager. Marson, who has the power to hire and fire employees, stated that it is part of his job to enforce the policies of New Life, which he understood to be that no harassment of any kind would be tolerated.

Pacheco stated that the harassment initiated about two months after she began employment and ended about one month before she was laid off. According to Pacheco, the harassment consisted of Marson rubbing her shoulders, touching her arms and waist, lifting her by the waist, telling her on several occasions that she looked sexy; and stating on one occasion that she should not flaunt her "cute little ass around," at which time she alleges Marson "smacked her on the butt."

Pacheco kept an informal, written history of some of her encounters with Marson starting in April of 1996. A male production employee who witnessed an encounter between Pacheco and Marson stated that he had seen Marson grabbing Pacheco and her telling Marson to stop.

After seven weeks of harassment, on June 6, 1996, Pacheco wrote a letter to her supervisor, Kim Walters, stating that Marson was acting inappropriately because "I find it very disrespectful and very uncomfortable for myself by [David Marson] grabbing my waist, smacking, touching my butt, and also making comments about my body. I feel this sort of thing should not happen in the work atmosphere." In this letter, Pacheco also stated that she was filing a complaint of sexual harassment with the EEOC.

Walters, in agreement with Richard Marson, president of New Life, and James Marson, vice president of New Life, (the sister, father, and brother of the accused) conducted an investigation into Pacheco's allegations. Walters stated that Richard and James Marson had to be involved because "there is no one else in the corpo-

ration that could conduct an investigation who has any authority whatsoever over Dave."

Walters testified that, as far as she had learned, Pacheco never behaved in a sexual or sexually inappropriate manner. Walters spoke with David Marson, Richard Marson, Laura French, who worked in the office with Pacheco, Ronald Pearson, warehouse manager, and Eric Walters, another production manager, concerning Marson's behavior. Except for Laura French, Walters did not remember speaking to anyone outside of management about the allegations. She stated that because there had never been any other allegations of harassment, she did not need to interview any of the non-management female employees.

When Walters spoke with Marson, he denied all of the allegations. However, Marson later testified that he "might have grabbed [Pacheco], touched her, it depends on what the situation was."

On July 3, 1996, approximately one month after filing her complaint, Pacheco received a memorandum from Walters stating that Richard and James Marson and Walters "are convinced that at no time did David make any sexual advances toward [sic] you." The memo also stated that Walters, Richard Marson, and James Marson met with Marson to inform him that New Life would not tolerate any improper conduct toward any employee and that he should not engage in this type of conduct. However, Marson stated that, although he had a conversation with his father and brother about sexual harassment, he was never disciplined or reprimanded in any way. Walters stated that she told Marson he "need[ed] to keep his hands off of people and to not be a pest in any way, shape or form, and that this is not acceptable behavior from anyone in this company." There was no further behavior from Marson after Pacheco complained to Walters.

conduct. However, New Life never produced a copy of the pamphlet.

On the same day that Walters issued the memo, Walters informed Pacheco that she was being laid off due to lack of work in the office. Walters never discussed the possibility of continuing work in another department. This layoff became permanent.

Walters testified that the decision to lay off Pacheco was made because there was not enough work for her. However, Walters testified that not only did she hire a temporary office worker in July shortly after Pacheco left, but that other employees were hired during the summer of 1996. Pearson, the warehouse manager, stated that New Life hired several people for both the office and the production department after Pacheco's layoff. He specifically recalled two women being hired as office personnel between July 3, 1996 (the day Pacheco was laid off) to December 31, 1996, and a third was hired in 1997.

### B. Procedural Background

On November 27, 1996, in the district court of Nevada, Pacheco filed a complaint alleging a hostile work environment due to sexual harassment by Marson and retaliatory discharge in violation of Title VII. On September 2, 1997, New Life filed a motion for summary judgment. Pacheco filed a motion in opposition, or in the alternative, partial summary judgment.[2] On October 17, 1997, the district court ordered summary judgment in favor of New Life. As to the hostile work environment claim, the court found that New Life had promptly conducted an investigation but the results were inconclusive.[3] The court found that New Life took satisfactory remedial action because, by warning the accused, the harassment stopped. As to the retaliation claim, the district court found that Pacheco did not provide sufficient evidence that New Life's reason for the layoff was pretextual.

**2.** Pacheco, in her opposition to the motion for summary judgment, conceded that her third and fourth claims for relief, *quid pro quo* sexual harassment and violation of Nevada state law, should be dismissed. The court dismissed those claims with prejudice.

### STANDARD OF REVIEW

■ A grant of summary judgment is reviewed de novo. *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995). Because the district court granted summary judgment in favor of New Life, we must assume the facts to be as alleged by Pacheco. *See Burlington,* 118 S.Ct. at 2262 (citation omitted).

■ Where the record and arguments have been fully developed, the application of the new standard may be analyzed and a determination made by the reviewing court. *See Faragher,* 118 S.Ct at 2293–94.

### DISCUSSION

A. Hostile Work Environment

■ We agree with the district court's finding that Pacheco had alleged sufficient instances in the form of comments and touching to show a hostile work environment existed. Applying the existing test for determining employer liability in a hostile work environment, however, the district court noted that Pacheco had to prove that New Life knew or should have known about the hostile work environment and that New Life failed to remedy or prevent it. *See E.E.O.C. v. Hacienda Hotel,* 881 F.2d 1504, 1515–16 (9th Cir.1989). The district court found that New Life had taken sufficient remedial action because the harassment stopped. This standard for employer liability in a hostile work environment is no longer applicable under the new, more stringent standard set forth by the Supreme Court in *Burlington* and *Faragher.*

The Supreme Court adopted a new standard in order "to accommodate the agency principles of vicarious liability for harm

**3.** "The investigation determined that what one of the employees had seen, Marson touching and grabbing Pacheco on one occasion, was 'commonplace horseplay.'"

caused by misuse of supervisory authority, as well as Title VII's equally basic policies of encouraging forethought by employers and saving action by objecting employees...." *Burlington*, 118 S.Ct. at 2270. The Court determined that,

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence.... No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

*Id.; Faragher*, 118 S.Ct. at 2292–93.

■ If the harassment is actionable and the harasser has supervisory authority over the victim, "we presume that the employer is vicariously liable for the harassment." *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 956 (9th Cir.1999); *see also Faragher*, 118 S.Ct. at 2292–93; *Burlington*, 118 S.Ct. at 2270. In Pacheco's case, the harassment is actionable and the harasser had supervisory authority over the victim. Therefore, New Life is vicariously liable.

■ The presumption of vicarious liability may be overcome "only if the alleged harassment has not culminated in a tangible employment action...." *Burrell*, 170 F.3d at 956; *see also Faragher*, 118 S.Ct. at 2293; *Burlington*, 118 S.Ct. at 2270. A tangible employment action includes a significant change in employment status. *Burlington*, 118 S.Ct. at 2268. Pacheco was laid off and never called back. Wal-

ters stated that she did not consider Pacheco for transfer, even though Pacheco had experience working in New Life's production division, nor did she consider Pacheco for employment openings which arose after Pacheco's layoff.

■ The Court in *Burlington* stated that, "A tangible employment decision requires an official act of the enterprise, a company act." 118 S.Ct. at 2269. As an example, the Court made reference to *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir.1990), which noted that even though an accused supervisor had not personally fired the plaintiff, the employer was still liable because the committee which did the firing functioned as the supervisor's "cat's-paw". *Burlington*, 118 S.Ct. at 2269. Although Marson did not personally fire Pacheco, Marson's sister, another co-owner, effectively terminated Pacheco's employment when she was laid off. It is not necessary that Pacheco be fired by Marson.

New Life maintains that Pacheco was laid off due to lack of work but offers no evidence to substantiate this statement,[4] except for offering a copy of an unemployment form Pacheco filled out. In answer to the question on the form of why she was no longer working for her previous employer, Pacheco wrote "lack of work."[5] Pacheco stated that she wrote this because it was the reason New Life gave her. New Life asserts this as an admission of the truth. New Life's reliance on this evidence is misplaced. Pacheco was not asked to put down her belief or speculation, but provide what reason was given by New Life when she was laid off. Pacheco did concede that there might have been less work but that her hours had never been cut back.[6] This single response is

---

4. There was no testimony that a written reprimand issued by Walters to Pacheco for wearing jeans, which Pacheco received after her complaint was filed, played any part in her layoff.

5. Pacheco testified that she spoke with the unemployment officer about the sexual harassment problem.

6. New Life maintains that Pacheco admitted she was laid off because there was not sufficient work in the office area. While Pacheco testified that she knew there had been some layoffs in production at some point in time, she never said she was laid off because of lack of work in the office. She stated those were the reasons given by New Life for her layoff.

not sufficient to legitimize New Life's purported reason. New Life offered no testimony or employment records as evidence of the lack of work and need to let workers go.

Weakening New Life's position further is the fact that new workers were hired not long after Pacheco's layoff. Walters stated that she had to hire an additional worker for the office shortly after Pacheco left (within that same month). There was also testimony from Pearson, the warehouse manager, that after Pacheco was laid off, two women were hired in the office between July 3 and December 31, 1996, and that a third woman was hired in 1997.

Viewing the evidence in a light most favorable to Pacheco, we conclude that New Life did take a tangible employment action.

■ While *Burlington* and *Faragher* allow an employer the opportunity to raise an affirmative defense if no tangible employment action has been taken, it appears from the record that any such avenue is closed to New Life. *See Faragher*, 118 S.Ct. at 2293. The *Burlington /Faragher* defense, which requires a showing by a preponderance of the evidence, is composed of two necessary elements: (1) that the employer exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm. *Burlington*, 118 S.Ct. at 2270; *Faragher*, 118 S.Ct. at 2293.

■ In analyzing the first prong, the Court in *Burlington* and *Faragher* stated, "While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed. . . ." *Faragher*, 118 S.Ct. at 2293; *Burlington*, 118 S.Ct. at 2270. Since 1980, the Equal Employment Opportunity Commission ("EEOC"), the agency which enforces Title VII, adopted regulations which call for all employers to institute procedures to prevent violations, such as informing employees of their rights and the means to assert those rights. *See* 29 C.F.R. § 1604.11(f); *see also Faragher*, 118 S.Ct. at 2292, 2294. The Court noted that an employer of a small workforce "might expect that sufficient care to prevent tortious behavior could be exercised informally. . . ." *Faragher*, 118 S.Ct. at 2293. Although New Life may not necessarily be categorized as having a "small workforce" with 80 employees, it is clear from the record that New Life had no sexual harassment policy nor complaint procedure in place, either formal or informal. There was no written policy at New Life and Walters, in charge of policies and procedures, could not remember ever discussing sexual harassment at the informal monthly employee meetings.

■ In its final order, the district court discussed this same issue when it analyzed whether New Life had exercised reasonable care to prevent and promptly correct any sexually harassing behavior. The district court concluded that "after the warning [to defendant] plaintiff experienced no further harassment. This is strong evidence of the appropriateness and adequacy of the remedy." We rejected this reasoning in *Fuller v. City of Oakland, California*, 47 F.3d 1522, 1528 (9th Cir.1995). When the employer in *Fuller* argued that "because the harassment stopped, its response was ipso facto reasonable," we observed that "this analysis omits a critical step. The fact that harassment stops is only a test for measuring the efficacy of a remedy, not a way of excusing the obligation to remedy. Once an employer knows or should know of harassment, a remedial obligation kicks in." *Id.*

The effectiveness of the employer's remedial action "will be measured by the twin purposes of ending the current harassment and **deterring future harassment** . . . ." *Fuller*, 47 F.3d at 1528 (cita-

tion omitted) (emphasis added). As we emphasized in *Fuller*, "An employer whose sole action is to conclude that no harassment occurred cannot in any meaningful sense be said to have 'remedied' what happened. Denial does not constitute a remedy. Nor does the fact of investigation alone suffice." *Id.* at 1529; *see also Yamaguchi v. United States Dept. of the Air Force*, 109 F.3d 1475 (9th Cir.1997) ("the employer must take adequate remedial measures in order to avoid liability for the harassment. These measures must include some form of disciplinary action."); *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir.1991) ("Title VII requires more than a mere request to refrain from discriminatory conduct.").

No company policy was established to target the actions of the harasser nor, according to Marson, was he reprimanded or disciplined in any way. In *Fuller*, we held that the district court should have entered judgment in favor of the plaintiff where the employer failed to take any appropriate remedial steps once it learned of the harassment. 47 F.3d at 1529.

In addition, we note another similarity with *Fuller* and the present case. The district court in *Fuller* observed that there were "serious deficiencies in the [company's] investigation which give the appearance of bias against the plaintiff." 47 F.3d at 1529. There are also deficiencies in New Life's investigation which give rise to serious doubts; (1) the investigation was conducted primarily by Marson's sister with the cooperation of Marson's father and brother; (2) there was a failure to interview additional female employees; and (3) the resulting finding that no harassment had occurred, even though Marson admitted that he "might have grabbed [Pacheco], touched her, it depends on what the situation was." This evidence gives the appearance of bias for the accused and against the plaintiff.

From the facts on record, we must conclude that New Life failed to take the appropriate remedial steps in addressing a claim of sexual harassment. Therefore,

New Life would fail to satisfy the first prong of the affirmative defense.

█ The second prong of the affirmative defense focuses on whether Pacheco reasonably availed herself of the avenues created by company policy to give notice of the harassment to the employer and whether New Life responded reasonably. *See Faragher*, 118 S.Ct. at 2293; *Burlington*, 118 S.Ct. at 2270; *see also Coates v. Sundor Brands, Inc.*, 160 F.3d 688, 695 (11th Cir.1998). Although there was no complaint procedure in place, Pacheco did file a complaint with her supervisor. New Life's response was to conduct an inadequate investigation, denying any harassment ever took place, and, a month later, to disassociate the complainant from the company. From the evidence in the record, we cannot conclude that Pacheco failed to act with reasonable care in taking advantage of the employer's safeguards and could have otherwise prevented harm that could have been avoided. *See Faragher*, 118 S.Ct. at 2292. New Life would therefore fail to satisfy the second prong of the affirmative defense.

We conclude that New Life did take a tangible employment action and remand to the district court to enter judgment in favor of Pacheco on the issue of employer liability.

B. Retaliation

█ To prove a *prima facie* case of unlawful retaliation, a plaintiff must establish (1) that she engaged in a protected activity, (2) that she suffered an adverse employment decision, and (3) that there was a causal link between the two events. *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1264 (9th Cir.1997). The district court determined that Pacheco was engaged in a protected activity when she reported the alleged discrimination to her supervisor and to the EEOC. The court also noted that Pacheco did later suffer the adverse employment decision of being laid off.

As to the third prong, this circuit has held that "temporal proximity" between filing of a complaint and discharge may be sufficient to find a causal link where a complainant's layoff occurred only four months after he filed a discrimination complaint. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir.1996); *see also Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) ("causation ... may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision."). In this case, the time frame is even more revealing. Only one month after she submitted a written complaint to her supervisor and filed an EEOC claim, Pacheco was laid off. Pacheco established a *prima facie* case of retaliation.

 Once a *prima facie* claim of retaliation has been established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the layoff. *Nidds*, 113 F.3d at 919. New Life stated that Pacheco was laid off along with other workers due to lack of work. New Life presented no evidence as to employee layoffs at that time, relying solely on Pacheco's statement on the unemployment form to substantiate this reason.

The deciding question then becomes whether Pacheco has "produced enough evidence from which a reasonable factfinder could conclude that [the defendant]'s reason was a pretext for retaliatory termination." *Nidds*, 113 F.3d at 919. The evidence that Pacheco presented to rebut New Life's stated reason was previously discussed in our analysis of whether Pacheco suffered a tangible employment action. Based on that evidence, we find that Pacheco did present sufficient evidence to controvert New Life's claim that its conduct was not in response to Pacheco's complaint. Therefore, summary judgment is

* Honorable Harlington Wood, Jr., Senior Circuit Judge, United States Court of Appeals for

not appropriate where there is a genuine issue of material fact. We reverse the district court's order of summary judgment in favor of New Life and remand the case for trial on the issue of retaliatory discharge.

## CONCLUSION

We reverse the district court's grant of summary judgment in favor of New Life and remand for such further proceedings as are consistent with this opinion.