Hattie STAR, Plaintiff–Appellant,

v.

Togo WEST, Acting Secretary, Department of Veterans Affairs, Defendant–Appellee.

No. 99–55624.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 13, 2000*

Filed Jan. 18, 2001

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App.P. 34(a)(2).

George Baltaxe, Encino, California, for the plaintiff-appellant.

Ira A. Daves, Assistant United States Attorney, Los Angeles, California, for the defendant-appellee.

Before: TASHIMA and TALLMAN, Circuit Judges, and ALSUP, District Judge.**

TASHIMA, Circuit Judge:

Plaintiff–Appellant Hattie Star asserts a hostile environment sexual harassment claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, against Defendant–Appellee Togo West, Jr., Acting Secretary of Veterans Affairs (VA). She appeals from the judgment in favor of the VA entered after a court trial. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we affirm.

** The Honorable William Alsup, United States District Judge for the Northern District of California, sitting by designation.

## I. BACKGROUND

At the time of the events complained of, Star was employed as a housekeeper at the West Los Angeles Veterans Affairs Medical Center. Her complaint is based on alleged harassment by a coworker, fellow housekeeper Oliver Watson.

At trial, Star claimed to be the victim of harassment that began in 1994 and lasted through the Fall of 1996. The district court found, however, that no harassment occurred before the Fall of 1996, and Star does not appeal that finding.

Consequently, the only events at issue on this appeal are two instances of unwelcome physical contact that occurred on September 12 and 13, 1996, during the same work shift. In each instance, Watson grabbed or put his arms around Star. At trial, Star claimed that Watson had squeezed her breasts, but her prior statements indicated only that he had grabbed her shoulders and hips. The district court did not resolve this conflict in the evidence as to the parts of Star's body that were touched or the manner in which they were touched.

On September 13, 1996, Star reported these incidents to her supervisor, James Craig. On the same day, Craig confronted Watson with the allegations, told him that the allegations were serious, and told Watson to stay away from Star.

On the next work day, Craig reported the allegations to his superior, who instructed him to investigate the allegations, inform Watson that the allegations were serious, and instruct both parties not to confront each other. Craig testified that he carried out all of these instructions, again telling Watson, on September 18, 1996, to stay away from Star. This testimony was uncontradicted.

On September 27, 1996, Star again complained to Craig about Watson, this time telling Craig that she was afraid of Wat-

son.[1]  Craig asked Star whether Watson had done anything more to bother or frighten her since the September 12 and 13 incidents, and she said that he had not. Star testified that Watson never touched her again after September 13.

On October 15, 1996, Star, still feeling afraid of Watson and believing that not enough was being done in response to her allegations, filed a complaint with the Equal Employment Opportunity (EEO) officer at the VA. Two days later, Watson was transferred to a different shift from the one that he and Star had worked on previously. Watson's new shift overlapped with Star's by one and one-half hours. VA employees testified that the shift change was not a disciplinary action against Watson but rather was a "precautionary measure" in response to the EEO complaint. Administrative review of the EEO complaint concluded that there was insufficient evidence to support a claim of sexual harassment.

Star subsequently commenced this action for sexual harassment on a hostile work environment theory. After a three-day bench trial, the district court found in favor of the VA. The court found that the two incidents of unwelcome physical contact had occurred, assumed *arguendo* that those incidents created a hostile work environment, but held that Star "failed to sustain her burden of presenting sufficient evidence to establish that defendant knew or should have known that additional disciplinary action, termination or reassignment was appropriate or warranted."

## II.  STANDARD OF REVIEW

■■■  The district court's findings of fact are reviewed for clear error. *Diamond v. City of Taft*, 215 F.3d 1052, 1055 (9th Cir.2000). Its conclusions of law are reviewed de novo. *Cigna Property and Cas. Ins. Cos. v. Polaris Pictures Corp.*, 159 F.3d 412, 418 (9th Cir.1998). The

district court's determination that the employer "took immediate and appropriate remedial action ... is reviewed de novo," because it presents a mixed question of law and fact. *Intlekofer v. Turnage*, 973 F.2d 773, 777 (9th Cir.1992).

## III.  DISCUSSION

■■■  "Once an employer knows or should know of [coworker] harassment, a remedial obligation kicks in." *Fuller v. City of Oakland*, 47 F.3d 1522, 1528 (9th Cir.1995). Such an employer will be liable for the hostile work environment created by the coworker unless "the employer ... take[s] adequate remedial measures in order to avoid liability." *Yamaguchi v. United States Dep't of the Air Force*, 109 F.3d 1475, 1482 (9th Cir.1997). The employer's actions should be "reasonably calculated to end the harassment." *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir.1991).

■■■  Star contends that the district court erred in finding that the VA's response to the harassment was adequate. She relies first on language in several of our cases indicating that an adequate employer response must always involve some form of "discipline" of the harasser. *See Yamaguchi*, 109 F.3d at 1483 (stating that "the employer's actions must ... discipline the offender"); *Intlekofer*, 973 F.2d at 777 (stating that the employer "must take some form of disciplinary action"). She then argues that the testimony of several VA managerial employees shows that none of the steps taken with respect to Watson—informing him of the allegations and their seriousness, ordering him to stay away from Star, and moving him to a different shift-constituted or are considered to be "disciplinary action."

■■■  We reject this argument. Although the cases in question do not define precisely what is meant by "discipline," the

1.  There was uncontradicted testimony at trial that Watson, a Vietnam veteran, was frequently intoxicated at work, sometimes spoke of having killed people (both while in the service and afterward), and so forth. Defense counsel conceded, in his opening statement, that Watson's disciplinary record was indefensible.

VA's failure to characterize its actions as "disciplinary" would, in any case, not be sufficient to show that they were not "disciplinary" within the meaning of the rule applied in those cases.[2]

 The discussion in the cited cases makes clear that counseling or admonishing the offender can constitute an adequate "disciplinary" response. In *Yamaguchi*, we affirmed the district court's denial of the plaintiff's motion for partial summary judgment on the issue of employer liability despite the fact that the offender was never "officially disciplined or reprimanded for his actions" but was "ordered to have no further contact with" the plaintiff, was moved to a different work site, and was forced to turn in his key to his previous work site. *See* 109 F.3d at 1483. In *Intlekofer*, we stated that "counseling sessions are not necessarily insufficient," although we stressed that they can be sufficient "only as a first resort." 973 F.2d at 779–80. Those cases therefore do not hold that counseling can never be a sufficient response.

 In addition, Watson was not merely counseled. After having been ordered to leave Star alone, he was moved to a different shift, even though Star admitted that the initial order had brought an end to Watson's harassing conduct. An employer's refusal to apply the label "discipline" to any of these actions is not determinative of their adequacy as a remedy. What is important is whether the employer's actions, however labeled, are adequate to remedy the situation.

Star's reliance on *Fuller* is likewise misplaced. The defendant in that case took no remedial action whatsoever, and the court held that the offender's voluntary cessation of harassing conduct was in itself insufficient to discharge the defendant's remedial obligation. *See Fuller*, 47 F.3d at 1528–29. Because the VA did take re-

medial action when informed of Watson's conduct, *Fuller* is inapplicable.

## IV. CONCLUSION

The VA promptly responded to Star's complaints by counseling Watson and ultimately moving him to a different shift. The district court's determination that this response was adequate, given what the VA knew or should have known, is not erroneous. The judgment of the district court is therefore

**AFFIRMED.**

---

**2.** Conversely, of course, labeling an action as "disciplinary" would not be the end of the

inquiry.