**Dawn HATHAWAY, Plaintiff–Appellant,**

v.

**MULTNOMAH COUNTY SHERIFF'S OFFICE, Defendant–Appellee.**

No. 03–35571.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 2004.

Decided Feb. 25, 2005.

Jacqueline A. Weber, Esq., Office of Multnomah County Attorneys, Portland, OR, for Defendant–Appellee.

Before: T.G. NELSON and RAWLINSON, Circuit Judges, and SCHWARZER,* Senior District Judge.

MEMORANDUM **

Dawn Hathaway appeals from the district court's grant of summary judgment for defendant Multnomah County Sheriff's Office (MCSO) in her action alleging sexual harassment in violation of federal and state law as well as common law battery. The parties are familiar with the facts, so we do not recite them here.

The district court limited its consideration of Hathaway's evidence of sexual harassment to evidence of a single incident between herself and Corrections Deputy Jack Dunlap on October 31, 2001. The district court arguably should have considered more of the evidence Hathaway offered, but the evidence it overlooked is likewise insufficient to raise triable issues with respect to Hathaway's claims.

To prevail on her hostile work environment harassment claim against MCSO Hathaway would have needed to show (1) "severe or pervasive" intimidation, *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir.2000), that was (2) "both subjectively and objectively ... abusive," *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir.1995) (citation omitted), and (3) that MSCO ratified or knew or should have

David H. Griggs, Esq., Patricia M. Pascone, Dolan Griggs & McCulloch LLP, Portland, OR, for Plaintiff–Appellant.

---

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

known about and in response to which it failed to take action or took insufficient action, *Swenson v. Potter,* 271 F.3d 1184, 1192 (9th Cir.2001).

■ (1) With respect to the objective abusiveness of Hathaway's environment, the district court should have considered evidence of other inappropriate conduct by Dunlap known to Hathaway. *See, e.g., Perry v. Ethan Allen,* 115 F.3d 143, 147, 151 (2d Cir.1997); *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1416 (10th Cir.1987); *see also Brooks,* 229 F.3d at 924. At the very least, Hathaway knew of Dunlap's unwelcome conduct toward one other MCSO employee. The district court noted that Hathaway reported other instances of troubling conduct by Dunlap toward her. These facts were relevant to whether a reasonable jury could find that Hathaway's work environment was objectively abusive under the "totality of the circumstances," *Brooks,* 229 F.3d at 923.

But even if this additional evidence is taken into account, it does not suffice to raise a triable issue concerning the objective abusiveness of Hathaway's work environment. We have held that allegations of rape and persistent physical assault of an invasively sexual nature may support a finding of an objectively abusive environment. *See, e.g., Rene v. MGM Grand Hotel, Inc.,* 305 F.3d 1061, 1064 (9th Cir. 2002); *Yamaguchi v. U.S. Dep't of the Air Force,* 109 F.3d 1475, 1478 (9th Cir.1997). Explicitly sexual language or conduct also usually supports such a finding. *See, e.g., Anderson v. Reno,* 190 F.3d 930, 933 (9th Cir.1999); *Montero v. Agco Corp.,* 192 F.3d 856, 859 (9th Cir.1999); *Draper v. Coeur Rochester, Inc.,* 147 F.3d 1104, 1105–06 (9th Cir.1998). In contrast, we have held that repeated "gender derogatory language" directed primarily toward other employees and some retaliatory conduct failed to raise a genuine issue as to the existence of an objectively hostile envi-

ronment. *Kortan v. CYA,* 217 F.3d 1104, 1109, 1110–111 (9th Cir.2000). Hathaway's evidence falls between these extremes, but closer to the *Kortan* end of the spectrum than to the *Yamaguchi* end. Hathaway's evidence certainly shows an "offensive" environment, *Kortan,* 217 F.3d at 1110, but is insufficient to support a jury conclusion that a reasonable woman would consider the environment abusive.

■ (2) Even if Hathaway's evidence of objective abusiveness sufficed to raise a triable issue, her evidence could not support the conclusion that she experienced a subjectively abusive work environment. A plaintiff's subjective experience need not be so severe as to cause "diagnosed psychological injury," *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1463 (9th Cir. 1994), but it must "mak[e] it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *Id.*

Hathaway presented evidence that she had trouble sleeping following the October 31, 2001, incident and afterward, a disturbance for which she sought counseling. She also presented evidence that Dunlap's other advances made her uncomfortable and that she communicated this to Dunlap. Hathaway further maintains that she fears future contact with Dunlap. All of this evidence, not just the evidence relating to the October 31, 2001, incident, might have been relevant to her showing of a subjectively abusive environment. *Brooks,* 229 F.3d at 923.

But she has produced no evidence or even alleged that her job performance has suffered or that she has considered looking elsewhere for work. *See Steiner,* 25 F.3d at 1463; *see also Harris v. Forklift Sys.,* 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (describing an abusive environment as one that "detract[s] from employees' job performance, discourage[s] em-

ployees from remaining on the job, or keep[s] them from advancing in their careers"). Thus, although the district court erroneously limited the evidence it considered, it correctly concluded that the evidence could not reasonably support a conclusion that her work environment was so subjectively abusive as to amount to employment discrimination.

■ (3) Finally, Hathaway did not produce evidence sufficient to show that MCSO had notice, before the October 31, 2001, incident, of a hostile work environment and failed to respond. Absent both (a) notice of actionable sexual harassment to and (b) deficient response by the employer, an employer is not liable for harassment by a coworker of the plaintiff. *See Swenson,* 271 F.3d at 1191–92 (citing *Burlington Indus. v. Ellerth,* 524 U.S. 742, 759, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

Hathaway presented some evidence that before October 31, 2001, MCSO had notice of Dunlap's repeated unwelcome advances to female MCSO employees. Arguably, a wider array of evidence—including conduct of which Hathaway was unaware—is relevant to MCSO's notice. *Cf. Hirase–Doi v. U.S. West Communications, Inc.,* 61 F.3d 777, 783 (10th Cir.1995) (holding that notice may arise from "widespread sexual harassment in the office place"). All of the evidence of this type in the record, however, involves conduct similar to but less severe than Dunlap's conduct toward Hathaway. If the conduct of which Hathaway knew cannot support a finding of an objectively abusive environment, then this other similar conduct cannot support such a finding.

Even if an actionable hostile environment did exist, MCSO's responses were appropriate. MCSO counseled Dunlap repeatedly. Hathaway nowhere alleges that MCSO ignored serious complaints about Dunlap's behavior or retaliated against complainants. *Cf. Little v. Windermere Relocation, Inc.,* 301 F.3d 958, 968–69 (9th Cir.2002) (finding actionable hostile work environment where employer failed to respond to complaints regarding rapes by coworker). And MCSO took serious corrective action, suspending Dunlap without pay for thirty days, in response to Hathaway's complaint and the investigation of the October 31, 2001, incident. A reasonable jury could not have found that MCSO's investigation and response fell short of the action an employer must take to avoid Title VII liability. *Swenson,* 271 F.3d at 1192.

■ (4) Finally, Hathaway argues that the district court erred in holding that MCSO could not be liable for Dunlap's battery of her because Dunlap was not acting within the scope of his employment at the time. Under Oregon law, vicarious liability requires that, inter alia, (a) the employee have been "motivated, at least partially, by a purpose to serve the employer"; and (b) the act have been "of a kind which the employee was hired to perform." *Chesterman v. Barmon,* 305 Or. 439, 753 P.2d 404, 406 (1998). Hathaway argues that Dunlap's conduct was an extreme form of behavior appropriate to his job, namely, friendliness to coworkers, and was therefore of a kind he was hired to perform.

As MCSO notes, this argument conflicts with Supreme Court precedent. In *Ellerth,* the Supreme Court addressed employers' liability under Title VII for supervisors' harassment of employees, using the same vicarious liability principles applied in Oregon. 524 U.S. at 756–57, 118 S.Ct. 2257. The Court noted a consensus among the circuits that "a supervisor acting out of gender-based animus or a desire to fulfill sexual urges may not be actuated by a purpose to serve the employer," *id.* at 756, 118 S.Ct. 2257 (citation omitted), and that

"[t]he general rule is that sexual harassment by a supervisor is not conduct within the scope of employment," *id.* at 757, 118 S.Ct. 2257. Only where an employer had an expressly gender-based promotions policy was a harassing supervisor found to have been acting within the scope of his employment. *Id.* at 757, 118 S.Ct. 2257 (citing *Sims v. Montgomery County Comm'n,* 766 F.Supp. 1052, 1075 (M.D.Ala. 1990)).

The *Ellerth* analysis forecloses the argument that a coworker's harassing behavior is within the scope of his employment. If a supervisor's unwanted advances cannot be characterized as friendliness taken too far, neither may a coworker's.

AFFIRMED