La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
Este caso nos ofrece la oportunidad de delinear con mayor precisión la obligación patronal de tomar las medidas inmediatas y apropiadas al conocer que entre sus empleados han ocurrido actos de hostigamiento sexual. Resolve-mos que las medidas adoptadas por el patrono no fueron suficientes para liberarlo de responsabilidad frente a la recurrida.
I
La parte peticionaria no ha impugnado las determinaciones de hechos del foro de instancia. Éstas revelan que la recurrida, Sra. Ada Iris Albino Agosto, fue empleada de la tienda “Nineteen Ninety Five” de Corozal desde el 20 de mayo de 1996 hasta el 22 de marzo de 1997. La señora Albino comenzó trabajando en el puesto de vendedora y fue ascendida a la posición de gerente en agosto de 1996. El Sr. William Otero era su supervisor inmediato en la tienda y el Sr. Angel Martínez, presidente de la corporación demandada y peticionaria Ángel Martínez, Inc., era su patrono.
Para esa época la tienda “Nineteen Ninety Five” tenía un Manual de Normas y Procedimientos que, entre otras cosas, regulaba los procedimientos que se habrían de seguir en los casos de hostigamiento sexual. Según la exposición narrativa de la prueba estipulada, durante todo el tiempo que la señora Albino trabajó en la tienda nunca vio dicho manual. En el adiestramiento que recibió del señor Otero no se le entregó el manual, no se discutió con ella su contenido ni se le orientó para que, como gerente, discutiera la información con sus empleados. Además, en la tienda no había cartelones que comunicaran el texto del manual.
El codemandado, Sr. Ramón Orsini, era el contable de la corporación demandada. El señor Orsini conoce al Sr. Án *463 gel Martínez desde pequeño y había trabajado con su familia desde 1970, por lo cual la relación entre ambos era de patrono-empleado y de amistad. Según la exposición narrativa de la prueba estipulada, renunció a la empresa en noviembre de 1997, cuando se eliminó su puesto a causa de un cambio administrativo.
Entre el señor Orsini y la señora Albino había una relación de compañeros de trabajo. Debido a las funciones del señor Orsini como contador de la corporación y las funciones de la señora Albino como gerente de tienda, ellos se comunicaban diariamente por teléfono y se veían en las reuniones mensuales de los gerentes de la corporación. Además, el señor Orsini visitaba la tienda de Corozal al menos una vez a la semana.
En junio o julio de 1996 la señora Albino solicitó un adelanto de nómina para pagar unas pruebas médicas de su hija. El señor Orsini le informó que la corporación no permitía el adelanto solicitado, pero que él podía prestarle el dinero. La señora Albino le aceptó un préstamo de $350 y, en agosto, volvió a tomar $150 prestados del señor Orsini para pagar unos libros de sus hijos. Ambas deudas fueron saldadas por la señora Albino en febrero de 1997.
Según las determinaciones de hechos del Tribunal de Primera Instancia y la exposición narrativa de la prueba estipulada, el señor Orsini cambió su forma de tratar a la señora Albino en agosto de 1996. Para esa fecha la señora Albino y el señor Orsini se reunieron en el almacén de la tienda con relación a un informe de ventas de la tienda de Corozal. En esa ocasión, el señor Orsini comenzó a tocarle las manos a la señora Albino, le miró las partes del cuerpo —los senos— y le abría los ojos como si la quisiera tocar; le hizo comentarios tales como “que bien te queda ese traje”, y le dijo que “tenía unas nalgas bonitas”. Peor aún, el señor Orsini subía y bajaba las manos tocando sus partes genitales. El tribunal concluyó que el señor Orsini repitió este comportamiento en dos o tres ocasiones durante agosto.
*464 Este cambio en el trato que el demandado le daba a su compañera de trabajo se manifestó también en las conversaciones entre ambos. En una ocasión, el señor Orsini llamó por teléfono a la señora Albino y ésta le informó que no había cumplido con la proyección de ventas de la tienda diciéndole “me caí por 75 centavos”, a lo cual el señor Orsini contestó, “si te caíste te lastimaste las nalguitas, yo te puedo sobar”. Durante otras conversaciones el señor Orsini le decía a la señora Albino que estaba bien vestida y le preguntaba que cuándo le iba a dar un beso. El tribunal encontró que ante este tipo de acercamientos la señora Albino se ponía nerviosa, se sentía presionada y reaccionaba cambiando el tema. Una vez confrontó al señor Orsini, diciéndole que ella era una mujer casada, con hijos y que no sabía por qué él le hacía esos comentarios. El señor Orsini no cambió su conducta.
El 19 de septiembre de 1996, después que terminó la reunión de gerentes celebrada en la oficina del Sr. Angel Martínez, la señora Albino le solicitó al señor Orsini la entrega de cierta mercancía que hacía falta en la tienda de Corozal. Mientras estaban en la oficina del señor Orsini, éste le habló bajito a la señora Albino y le dijo: “Quédate conmigo que estoy solo.” La señora Albino se negó indicándole que la esperaban su esposo e hijos.
Ese mismo día la secretaria del Sr. Angel Martínez le pidió a la señora Albino que la llevara a su casa. Mientras la secretaria recogía para irse, la señora Albino salió al estacionamiento donde se encontró al señor Orsini. Este la invitó a que se fueran todo un día a Caguas o a comer mientras otra empleada se hacía cargo de la tienda. La señora Albino se negó y tomó estos comentarios como una propuesta de carácter sexual.
Con motivo de estos incidentes, para septiembre de 1996 la señora Albino se sentía insegura, nerviosa, con mucha presión y temía que el señor Orsini la tocara o le hiciera comentarios fuera de lugar. La señora Albino rebajó de peso, comenzó a usar ropa más grande y se veía demacrada. Además, la relación con su familia comenzó a *465 deteriorarse, ya que no les prestaba atención y hasta comenzó a ser agresiva con su esposo.
Durante este tiempo, otra empleada de la tienda de Corozal, quien también era casada, le comentó a la señora Albino que el señor Orsini la llamaba a su casa, la invitaba a salir, le decía que dejara a su marido y que ella no tenía que trabajar porque él la podía mantener. A su vez, la señora Albino le informó a dicha empleada la conducta impropia que el señor Orsini mostraba hacia ella.
El 16 ó 17 de octubre de 1996, según las determinaciones de hechos del foro de instancia, la señora Albino decidió notificarle a su supervisor, el Sr. William Otero, el problema que ella y su compañera de trabajo tenían con el señor Orsini. La señora Albino le explicó al señor Otero que el señor Orsini le decía piropos y le hacía acercamientos de naturaleza sexual. Ese mismo día el señor Otero le informó al señor Martínez lo que la recurrida le había notificado.
Al otro día se celebró una reunión de gerentes en Caguas. Allí, en presencia del señor Otero, la señora Albino le ratificó al señor Martínez lo que ella había notificado a su supervisor sobre la conducta impropia exhibida por el señor Orsini. Le informó que en la reunión de gerentes celebrada en septiembre de 1996, el señor Orsini la invitó a quedarse con él y que la conducta mostrada por éste causaba que ella y su compañera de trabajo se sintieran hostigadas.
El señor Martínez reconoció que se trataba de un problema preocupante y le indicó a la señora Albino que ella tenía que decidir si se debía despedir al señor Orsini. La señora Albino se negó a hacerlo pues, según expresó, ese no era su deber, sino del propio señor Martínez. Además, le informó al señor Martínez que lo que ella quería era que cesara el hostigamiento y que el señor Orsini dejara de visitar la tienda de Corozal. El señor Martínez le contestó que hablaría con el señor Orsini.
El próximo día, 18 ó 19 de octubre de 1996, el señor Martínez se reunió con la señora Albino y la otra empleada *466 quien, alegadamente, también era hostigada por el señor Orsini. El patrono concluyó que la conducta del señor Orsini era suficiente para constituir el hostigamiento sexual y que conllevaba el despido. Por eso, el señor Martínez se reunió con el señor Orsini, le informó sobre las quejas de hostigamiento sexual presentadas por ambas empleadas y le solicitó la renuncia. El codemandado Orsini, según determinó el tribunal, “se puso bien colorado”, se quedó callado, luego se levantó y fue a la farmacia a buscar un medicamento para la presión. A los quince minutos regresó y le dijo al señor Martínez que él no podía renunciar porque no había hecho nada. El patrono le indicó que iba a hacer una investigación y el codemandado no renunció.
En respuesta a las quejas de hostigamiento sexual, y aún durante octubre de 1996, el señor Martínez le dio instrucciones a su secretaria y al señor Orsini para que canalizaran los trabajos de la tienda de Corozal, incluyendo las llamadas telefónicas, a través de dicha secretaria o del propio señor Martínez.(1) El señor Orsini aceptó estas instrucciones. El señor Martínez no verificó si el señor Orsini estaba haciendo más visitas de las necesarias a la tienda de Corozal o si se siguieron las instrucciones que había impartido. Entre la señora Albino y el señor Martínez había buena comunicación; hablaban del trabajo y de sus respectivos familiares. Sin embargo, el señor Martínez *467 no le preguntó a la señora Albino si el señor Orsini la seguía hostigando y tampoco indagó con el supervisor inmediato de la señora Albino qué había sucedido con la situación de hostigamiento sexual denunciada por ella.
Determinó el tribunal que el señor Orsini continuó visitando la tienda de Corozal por distintas razones, después que el señor Martínez le llamó la atención. Una de las visitas fue un almuerzo de Acción de Gracias de los empleados de la tienda de Corozal, al cual fue invitado por la gerente, señora Albino. A fines de noviembre de 1996 el señor Orsini regresó al patrón de conducta anterior. Comenzó a hacerle llamadas hostigadoras a la señora Albino, pidiéndole que le diera un beso.
El 26 ó 27 de diciembre de 1996, por órdenes del señor Martínez, el codemandado Orsini visitó la tienda de Corozal para revisar un descuadre. Llegó temprano y le pidió a la otra empleada de la tienda que se quedara en el piso en lo que él se reunía con la señora Albino. Entonces, cerró la puerta, se le pegó a la recurrida y trató de besarla. La señora Albino se echó para atrás y le dijo “que [sic] usted hace”. El señor Orsini se rió. Luego de este suceso, el señor Orsini visitó la tienda de Corozal en febrero de 1997.
El foro de instancia encontró probado que, después de presentar la queja, la señora Albino invitó al señor Orsini y al señor Martínez al cumpleaños de su hijo. Según la exposición narrativa de la prueba estipulada, el señor Orsini no fue a la fiesta.(2) Además, el señor Otero testificó que para mediados de diciembre vio a la recurrida riéndose mientras hablaba por teléfono con el señor Orsini y que le dijo a ésta: “no cuques el avispero después de lo que ha pasado.” El señor Otero informó de este incidente al señor Martínez, quien le indicó que hablaría con el señor Orsini y ordenó al señor Otero que le llevara el mensaje de que “cortaran” la “relación”. No surge de las determinaciones de hechos del *468 tribunal ni de la exposición narrativa de la prueba que efectivamente hubiera hablado el señor Martínez con el señor Orsini tras este incidente.
El 7 de enero de 1997, la señora Albino y la otra empleada que había presentado la queja junto con ella, se querellaron ante el Departamento del Trabajo. Alegaron que el señor Martínez no había actuado en torno a los actos de hostigamiento sexual del señor Orsini. El 14 de marzo de 1997, la señora Albino presentó una demanda por hostigamiento sexual contra el Sr. Ramón Orsini y la corporación Ángel Martínez, Inc. El 22 de marzo de 1997, el señor Otero le entregó una amonestación a la señora Albino y ésta le indicó que tenía problemas en su matrimonio, en la tienda y que no podía más con el hostigamiento que sufría por parte del señor Orsini. Ese mismo día, la señora Albino renunció a su trabajo.
La demandante Albino se reportó al Fondo del Seguro del Estado el 24 de marzo de 1997, como consecuencia de los actos de hostigamiento sexual a los que fue sometida mientras laboraba con la corporación Ángel Martínez, Inc. A la fecha cuando se dicta la sentencia de instancia, la señora Albino recibía tratamiento psiquiátrico de la Dra. Ada Lizzie Delgado Mateo.
El tribunal determinó que la relación de la señora Albino con su esposo se afectó negativamente como consecuencia del hostigamiento sexual sufrido en el trabajo. La demandante Albino estaba insegura, ansiosa y nerviosa. No atendía los quehaceres diarios ni a sus hijos, se mostraba agresiva y no tenía relaciones íntimas con su esposo. En noviembre de 1996, el esposo de la señora Albino se fue del hogar debido a esta situación, pero posteriormente ella le contó sobre los actos de hostigamiento sexual cometidos por el señor Orsini y su esposo decidió regresar al hogar para darle apoyo.
La señora Albino padece de una depresión severa mayor. Esto es un trastorno afectivo que se demuestra por el estado deprimido prolongado, la pérdida de interés y de concentración, fatiga, dificultad para dormir, lentitud en *469 los movimientos motores, llanto recurrente e ideación suicida. Se le recomendó tomar medicamentos antidepresivos, ansiolíticos y recibir terapia de sostén y apoyo. La condición de la señora Albino posee varios agravantes: tener que acudir al tribunal, el problema ocupacional, problemas con su esposo como resultado del hostigamiento sexual en el empleo, el hecho de que su madre se tuvo que hacer cargo de sus hijos y de los problemas económicos. En su testimonio la doctora Delgado indicó que no ha visto mejoría en el tratamiento, que la señora Albino no tiene tolerancia para realizar las labores cotidianas que se requieren para trabajar y que le recomienda solicitar una incapacidad ocupacional.
El 7 de agosto de 1998, el Tribunal de Primera Instancia determinó que la conducta del señor Orsini constituyó hostigamiento sexual, en su modalidad de ambiente hostil, y que el patrono no llevó a cabo una acción apropiada para corregir la situación. Le impuso responsabilidad solidaria a los codemandados y determinó que los daños y perjuicios sufridos por la recurrida ascienden a un total de $75,000 y que, según el Art. 11 de la Ley Núm. 17 de 22 de abril de 1988 (29 L.P.R.A. sec. 155j), corresponde a ésta una suma igual al doble de los daños sufridos. Además, el tribunal le impuso a los codemandados el pago de $18,750 en concepto de los honorarios de abogados y las costas del litigio.
De la sentencia del Tribunal de Primera Instancia recurrieron los demandados al anterior Tribunal de Circuito de Apelaciones, que confirmó la sentencia recurrida. El 9 de marzo de 2001 la corporación demandada Ángel Martínez, Inc. solicitó nuestra intervención mediante una petición de certiorari, la cual fue acogida en una segunda moción de reconsideración. Posteriormente, tanto la parte recurrida como la peticionaria presentaron sus alegatos correspondientes.
La parte peticionaria señala que el foro apelativo erró al no revocar la determinación del Tribunal de Primera Instancia que le impone responsabilidad por los actos de hostigamiento sexual alegados por la señora Albino y la obliga *470 a pagar una cantidad exagerada en concepto de daños. Además, plantea que la sentencia del tribunal apelativo no está sustentada por las determinaciones de hechos del tribunal de instancia, que no hay una determinación de hechos del tribunal de instancia que establezca un nexo causal entre el alegado hostigamiento sexual y los daños sufridos por la recurrida y que la sentencia del foro apelativo tiene el efecto de adoptar una norma que impone responsabilidad absoluta al patrono en los casos de hostigamiento sexual entre empleados y releva a lá víctima de su obligación de notificar al patrono los actos que podrían ser constitutivos de hostigamiento sexual.
II
Es un principio rector de nuestro orden social, establecido en la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, que la dignidad del ser humano es inviolable. A su amparo se prohíbe expresamente el discrimen por razón de raza, color, sexo, nacimiento, origen, condición social e ideas políticas o religiosas. Además, también como derivado lógico del imperativo de la dignidad, nuestra Constitución protege a toda persona contra ataques abusivos a su honra, reputación y vida privada o familiar. Art. II, Secs. 1 y 8, Const. E.L.A., L.P.R.A., Tomo 1. Cumpliendo con este mandato constitucional, la Asamblea Legislativa ha adoptado leyes que protegen la dignidad del ser humano en el contexto laboral. Entre éstas se aprobó la Ley Núm. 17 de 22 de abril de 1988 (29 L.P.R.A. see. 155 et seq.) con el propósito de elevar el hostigamiento sexual en el empleo al mismo nivel jurídico que las otras modalidades de discrimen identificadas y proscritas en leyes anteriores. Exposición de Motivos de la Ley Núm. 17, supra, 1988 Leyes de Puerto Rico 80. Esta ley prohíbe el hostigamiento sexual en el empleo y lo declara como una forma de discrimen por razón de género que atenta contra la dignidad humana. 29 L.P.R.A. see. 155.
*471 El Art. 3 de la Ley Núm. 17, supra, define el hostigamiento sexual en el empleo de la manera siguiente:
El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual, cuando se da una o más de las siguientes circunstancias:
(a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.
(b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.
(c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo. 29 L.P.R.A. sec. 155b.
El hostigamiento sexual en el empleo tiene, pues, dos modalidades. Los incisos (a) y (b) de la definición citada se refieren a la modalidad de hostigamiento equivalente o quid pro quo, mientras que el inciso (c) recoge la modalidad de hostigamiento sexual por ambiente hostil. Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 D.P.R. 643, 653 (1994). La determinación de si determinada conducta en el empleo constituye hostigamiento sexual, en cualquiera de sus dos modalidades, se hará considerando la totalidad de las circunstancias y los hechos particulares de cada caso. 29 L.P.R.A. sec. 155c.
Hemos resuelto que la modalidad de hostigamiento equivalente o quid pro quo se produce cuando el sometimiento o rechazo de los avances o requerimientos sexuales se toma como fundamento para afectar beneficios tangibles en el empleo. El demandante debe, por lo tanto, probar que el sometimiento o el rechazo a la solicitud de favores sexuales y al sufrimiento de avances de igual tipo fue la causa de una decisión adversa en cuanto a una condición o un término de su empleo. Rodríguez Meléndez v. Sup. Amigo, Inc., 126 D.P.R. 117, 132 (1990). Véase, además, S.L.G. Afanador v. Roger Electric Co., Inc., 156 D.P.R. 651 (2002). Si es despedido u obligado a renunciar, el de *472 mandante debe establecer que las deficiencias en el desempeño de sus funciones laborales, por las cuales fue despedido o que llevaron a su renuncia, son consecuencia directa del ambiente hostil en el que se vio obligado a trabajar. Deberá probar también que estuvo sujeto a hostigamiento sexual por ambiente hostil. Rodríguez Meléndez v. Sup. Amigo, Inc., supra, pág. 133. Véase, además, In re Robles Sanabria, 151 D.P.R. 483, 501 (2000).
La modalidad de hostigamiento sexual por ambiente hostil se produce cuando la conducta sexual hacia una persona tiene el efecto de interferir irrazonablemente con el desempeño de su trabajo o de crear un ambiente laboral intimidante, hostil u ofensivo. La justiciabilidad de una reclamación por ambiente hostil no requiere que dicha conducta produzca un daño económico y tampoco es indispensable que ésta sea de naturaleza explícitamente sexual; basta con que el hostigamiento o trato desigual se dirija a la persona únicamente por razón de su género. La conducta constitutiva de hostigamiento debe ser lo suficientemente severa y ofensiva como para alterar las condiciones del empleo y crear un ambiente de trabajo abusivo. Este examen debe realizarse tomando en consideración factores como la naturaleza de la conducta alegada, su frecuencia e intensidad, el contexto en el que ocurre, su duración, y la conducta y circunstancias personales de la alegada víctima. Rodríguez Meléndez v. Sup. Amigo, Inc., supra, págs. 131-132. Véanse, además: In re Robles Sanabria, supra, págs. 500-501; S.G.L. Afanador v. Roger Electric Co., Inc., supra.
Una vez se determina que una conducta constituye hostigamiento sexual en el empleo, en cualquiera de sus dos modalidades, la Ley Núm. 17, supra, dispone cómo responsabilizar o exonerar al patrono por las consecuencias de la conducta ilegal.(3) Así, el patrono será responsa *473 ble por sus propios actos y los de sus agentes o supervisores, independientemente de si dichos actos fueron autorizados o prohibidos por éste, o si el patrono sabía o debía estar enterado de dicha conducta. 29 L.P.R.A. sec. 155d.(4) Sin embargo, si quienes incurrieron en el hostigamiento sexual fueron personas no empleadas por el patrono, éste será responsable sólo si él, sus agentes o supervisores sabían o debían saber de dicha conducta y no tomaron una acción inmediata o apropiada para corregir la situación. 29 L.P.R.A. sec. 155f.
Cuando la conducta denunciada ocurre entre empleados, aplica una norma similar. El patrono será responsable en la medida como conocía o debía conocer dicha conducta, por sí o constructivamente a través de sus agen *474 tes o supervisores, y no logra establecer que tomó una acción inmediata y apropiada para corregir la situación. 29 L.P.R.A. sec. 155e.(5) En esos casos, la víctima puede pro-bar que su patrono sabía de la conducta alegada, demostrando que le notificó la situación a él o a ella, o a su agente o supervisor, o que la situación era tan grave que éstos debían conocerla. Rodríguez Meléndez v. Sup. Amigo, Inc., supra, págs. 128-129.(6) Una vez el empleado demuestra que el patrono conocía o debió haber conocido sobre los actos de hostigamiento, entonces le corresponderá al patrono probar que actuó de manera inmediata y apropiada para corregir la situación. Esto implica que en el momento cuando un empleado le notifica a su patrono, agente o supervisor que ha sido hostigado por un compañero de trabajo, se activa la responsabilidad afirmativa del patrono de tomar una acción correctiva. 29 L.P.R.A. sec. 155e. Exposición de Motivos de la Ley Núm. 17, supra.(7)
En Delgado Zayas v. Hosp. Int. Med. Avanzada, supra, resolvimos que la acción inmediata requerida ante unos actos de hostigamiento sexual entre empleados era el despido, porque el reglamento del patrono claramente exponía que la primera violación de un empleado a su política contra el hostigamiento sexual conllevaría el despedido. En esas circunstancias el patrono actuó de forma inmediata y apropiada al despedir a un empleado que conocía el reglamento y cometió actos de hostigamiento sexual de tal seriedad que puso en peligro el orden de la empresa. Delgado Zayas, supra, págs. 657-658.
*475 Es necesario aclarar, sin embargo, que la Ley Núm. 17, supra, no establece el despido como la “acción inmediata y apropiada” que se requiere del patrono ante unos actos de hostigamiento sexual entre empleados. Esta ley permite que el patrono se libere de responsabilidad mediante una “acción inmediata y apropiada” distinta al despido.
Una acción inmediata y apropiada es aquella que razonablemente terminará sin demora los actos de hostigamiento sexual y evitará su repetición de manera efectiva.(8) Para determinar si un patrono tomó una acción inmediata o apropiada es necesario examinar las circunstancias particulares de cada caso, entre éstas, la existencia de un reglamento aplicable a la situación y el cumplimiento por el patrono con lo allí dispuesto.
Además de la responsabilidad que tiene un patrono por los actos de hostigamiento sexual en el empleo que ocurran en su empresa, todo patrono tiene ciertos deberes afirmativos dirigidos a prevenir el hostigamiento. Entre estos deberes, tiene los siguientes: mantener continuamente un centro de trabajo libre de hostigamiento sexual e intimidación; prevenir, desalentar y evitar el hostigamiento sexual en el empleo; exponer claramente su política contra el hostigamiento sexual en el lugar de trabajo, y garantizar que sus supervisores y empleados puedan trabajar con seguridad y dignidad. 29 L.P.R.A. sec. 155i. La Ley Núm. 17, supra, requiere que el patrono tome las medidas necesarias para poder cumplir de forma continua con los deberes antes expuestos. Las siguientes son algunas de las medidas requeridas por la ley:
(a) Expresar claramente a sus supervisores y empleados que el patrono tiene una política enérgica contra el hostigamiento sexual en el empleo.
*476 (b) Poner en práctica los métodos necesarios para crear conciencia y dar a conocer la prohibición del hostigamiento sexual en el empleo.
(c) Dar suficiente publicidad en el lugar de trabajo, para los aspirantes a empleo, de los derechos y protección que se les confieren y otorgan bajo las sees. 155 a 1551 de este título, al amparo de las sees. 1821 a 1341 de este título, las sees. 146 a 151 de este título y de la Constitución del Estado Libre Asociado de Puerto Rico.
(d) Establecer un procedimiento interno adecuado y efectivo para atender querellas de hostigamiento sexual. 29 L.P.R.A. sec. 155i.
Al determinar si un patrono ha tomado una acción inmediata y apropiada ante una querella por hostigamiento sexual entre empleados es necesario evaluar si éste cumplía con los deberes continuos que le impone la Ley Núm. 17, supra. Ello requerirá evaluar si el patrono tenía una política efectiva contra el hostigamiento sexual en el empleo, si expresaba claramente y tomaba las medidas necesarias para crear conciencia y dar a conocer dicha política, si daba suficiente publicidad en el lugar de trabajo sobre los derechos y las protecciones que cobijan a los empleados, y si había establecido un procedimiento adecuado y efectivo para atender querellas sobre hostigamiento sexual.
III
En el caso ante nuestra consideración es evidente que la conducta desplegada por el señor Orsini hacia la señora Albino, mientras ésta trabajaba en la tienda “Nineteen Ninety Five” de Corozal, constituía hostigamiento sexual. En agosto de 1996, durante una reunión en el almacén de la tienda, el señor Orsini hostigó a la señora Albino tocándole sus manos, mirándole las partes del cuerpo como si la quisiera tocar y haciéndole comentarios impropios, como por ejemplo, que “tenía las nalgas bonitas”. Además, en dicho incidente el señor Orsini subía y bajaba las manos mientras tocaba sus partes genitales. Esto último lo hizo en dos o tres ocasiones durante agosto.
*477 El señor Orsini hostigaba a la señora Albino a través de sus conversaciones y llamadas telefónicas. Le decía que le podía sobar las nalgas y le preguntaba que cuándo le iba a dar un beso. En septiembre de 1996, al finalizar una reunión de gerentes, el señor Orsini le propuso a la señora Albino que se quedara con él porque estaba solo y la invitó a pasar todo un día en Caguas, mientras otra empleada se hacía cargo de la tienda en Corozal.
El señor Orsini continuó hostigando a la señora Albino, aún después de que el patrono señor Martínez le informara, en octubre de 1996, sobre la queja en su contra que habían presentado dos empleadas de la tienda, incluyendo a la recurrida, por sus actos de hostigamiento sexual y después que se le impartieran instrucciones de llevar a cabo los trabajos de la tienda de Corozal, a través del propio señor Martínez o de su secretaria. El patrón de conducta hostigante se restableció en noviembre de 1996. Este incluyó llamadas telefónicas impropias y actos corporales hostigadores. En una ocasión, siguiendo las órdenes de su patrono de visitar la tienda de Corozal para revisar un descuadre, el señor Orsini se le pegó a la señora Albino y trató de besarla.
La conducta antes descrita creó un ambiente laboral hostil, intimidante y ofensivo, que tuvo el efecto de interferir irrazonablemente con el desempeño de la señora Albino en su taller de trabajo. En septiembre de 1996 la señora Albino se sentía insegura, nerviosa, con mucha presión y temía que el señor Orsini la tocara o le hiciera comentarios fuera de lugar. La señora Albino rebajó de peso, comenzó a usar ropa más grande y se veía demacrada. El ambiente hostil al que fue sometida la señora Albino duró hasta su último día de trabajo, cuando su supervisor le entregó una amonestación por deficiencias en el desempeño de sus funciones laborales y la recurrida le informó que tenía problemas en su matrimonio y en la tienda, y que no podía más con el hostigamiento sexual que sufría por parte del señor Orsini. Ese mismo día la recurrida decidió renunciar.
*478 Ante los hechos que el Tribunal de Primera Instancia encontró probados y que la parte peticionaria no ha impugnado, concluimos que la conducta del señor Orsini constituyó hostigamiento sexual en la modalidad de ambiente hostil. Rodríguez Meléndez v. Sup. Amigo, Inc., supra; In re Robles Sanabria, supra; S.L.G. Afanador v. Roger Electric Co., Inc., supra. Además de incurrir en esta conducta ilegal, el señor Orsini quebrantó la política de la empresa contra el hostigamiento sexual. Anteriormente hemos establecido que el manual de normas de una empresa forma parte del contrato de trabajo de los empleados. Santiago v. Kodak Caribbean, Ltd., 129 D.P.R. 763, 775-776 (1992). En específico, el Manual de Normas y Procedimientos de la tienda “Nineteen Ninety Five” dispone:
“Es responsabilidad de todo el personal de esta Empresa el NO incurrir en hostigamiento sexual ni crear un ambiente hostil en el trabajo. También debe velar por que otros compañeros de trabajo, ya sean supervisores, gerentes o empleados regulares, no incurran en conducta hostigante o ayuden a establecer un ambiente hostil de trabajo.
La Empresa tampoco tolerará conducta hostigante hacia un empleado por parte de un cliente o visitante a nuestra Empresa. La Ley claramente prohíbe este tipo de conducta, no importa de donde provenga, y la Empresa no tolerará este tipo de conducta, no importa quien incurra en ella. Nadie tiene que someterse, aceptar ni tolerar este tipo de conducta en nuestra Empresa.” Según citado en la Sentencia del Tribunal de Primera Instancia, pág. 27.
Habiendo determinado que la conducta del señor Orsini es constitutiva de hostigamiento sexual en el empleo, examinemos la responsabilidad del patrono con relación a dicha conducta. Tratándose de una situación de hostigamiento sexual entre empleados debemos establecer, en primer lugar, si la señora Albino probó que su patrono o supervisor sabía o debía estar enterado de dicha conducta y, en segundo lugar, si el patrono probó haber tomado una acción inmediata y apropiada para corregir la situación. 29 L.RR.A. sec. 155e. Respecto a esto, el señor Martínez alega que la sentencia del foro apelativo tiene el efecto de adoptar una norma que le impone responsabilidad absoluta al *479 patrono en los casos de hostigamiento sexual entre empleados. No tiene razón. La sentencia recurrida no incurre en el error señalado; más bien, el tribunal apelativo aplica la doctrina vigente, de acuerdo con la cual, según hemos explicado, la responsabilidad de los patronos ante este tipo de situación no es absoluta y depende de los dos elementos anteriormente descritos.
El que la señora Albino hubiera notificado a su supervisor y luego ratificado en conversación directa con su patrono que el señor Orsini la estaba hostigando sexualmente, es prueba suficiente para establecer que el patrono conocía sobre los actos de hostigamiento sexual ocurridos entre sus empleados. Rodríguez Meléndez v. Sup. Amigo, Inc., supra, págs. 128-129.(9) Ese mismo hecho demuestra que se había activado la responsabilidad del patrono de tomar una acción inmediata y apropiada que razonablemente terminara sin demora los actos de hostigamiento sexual y evitara la repetición de éstos de manera efectiva.(10) Le correspondía entonces al patrono demostrar que tomó acción no sólo inmediata, sino apropiada para liberarse de responsabilidad. 29 L.P.R.A. sec. 155e. Ala luz de la totalidad de las circunstancias de este caso, resolve-mos que el señor Martínez tomó una acción inmediata, pero no apropiada, para corregir la situación. Veamos.
El Manual de Normas y Procedimientos de la empresa explica los pasos que el patrono deberá seguir ante una querella de hostigamiento sexual presentada por alguno de sus empleados. Este manual dispone al respecto:
“Toda persona que haya presenciado o sea víctima de un acto de hostigamiento sexual, podrá querellarse con sus supervisores según el procedimiento establecido en este manual. La Empresa investigará las querellas y tomará aquella acción correctiva que entienda necesario. Se garantizará la confidencialidad a todas las partes envueltas.
*480 Toda querella de hostigamiento será investigada por la Empresa. Toda investigación se mantendrá en estricta confidencialidad, y la Empresa no divulgará información sobre la querella o los resultados de la misma a personas que no estén relacionadas con la investigación. Por supuesto, como parte de toda investigación, será necesario entrevistar a distintas personas, pero se usará la mayor discreción posible para evitar publicidad innecesaria a la querella.
La Empresa hará todo lo que esté a su alcance para investigar y disponer de toda reclamación por hostigamiento,sexual de la forma más rápida y confidencialmente posible.” (Enfasis suplido.) Según citado en la Sentencia del Tribunal de Primera Instancia, pág. 28.
No hay duda de que el supervisor inmediato de la señora Albino fue diligente al informar al señor Martínez lo que la recurrida le había notificado. El señor Martínez también actuó inmediatamente al recibir esta información y, en cumplimiento con las normas del manual de la empresa, decidió iniciar una investigación sobre los hechos alegados. Apenas un día después de conocer sobre la queja se reunió con la señora Albino, quien le confirmó lo que había notificado a su supervisor y le solicitó que tomara acción para que cesara el hostigamiento sexual y el señor Orsini dejara de visitar la tienda de Corozal.
Un día después de esta reunión, el señor Martínez se reunió nuevamente con la señora Albino. En esta ocasión estuvo presente la otra empleada que alegadamente también era hostigada por el señor Orsini. Durante esta reunión el señor Martínez concluyó que la conducta del señor Orsini era constitutiva de hostigamiento sexual y conllevaba el despido. Sin embargo, cuando se reunió con el señor Orsini, y éste negó haber incurrido en la conducta imputada y no accedió a renunciar, el señor Martínez decidió no despedirlo y no continuar con la investigación. El Manual de Normas y Procedimientos de la empresa requiere que el patrono tome la acción correctiva que entienda necesaria y que todo empleado que incurra en actos de hostigamiento sexual sea sancionado. El manual explica:
“La persona que incurra en conducta hostigante o que ayude *481 a establecer un ambiente hostil de trabajo será sancionada por la Empresa. De igual forma, aquellas personas que tienen conocimiento de conducta sexual prohibida, pero que rehúsan suplirle esta información a la Empresa podrán ser igualmente sancionad [o] s.
Toda persona que haya presenciado o sea víctima de un acto de hostigamiento sexual, podrá querellarse con sus supervisores según el procedimiento establecido en este manual. La Empresa investigará las querellas y tomará aquella acción correctiva que entienda necesario. Se garantizará la confidencialidad a todas las partes envueltas.” (Énfasis suplido.) Según citado en la Sentencia del Tribunal de Primera Instancia, págs. 27-28.
El señor Martínez optó por imponer una medida correctiva que no cumplió con las exigencias del manual, pues no sancionó al señor Orsini. En vez, optó por impartir unas “instrucciones” para que los trabajos de la tienda de Corozal se realizaran a través del propio señor Martínez o de su secretaria. El propósito de estas instrucciones fue minimizar el contacto entre el señor Orsini y las empleadas de la tienda de Corozal, pero no surge de la prueba ni de las determinaciones del tribunal que prohibiera todo contacto de Orsini con dicha tienda.(11) Por eso, aunque tuvieran como objetivo evitar que ocurrieran actos de hostigamiento sexual, estas instrucciones no aseguraron que el señor Orsini cesara de visitar la tienda de Corozal y no eliminaron todo tipo de contacto entre el señor Orsini y la recurrida. Esto lo comprueba el hecho de que el 26 ó 27 de diciembre de 1996 el demandado Orsini visitó la tienda de Corozal por órdenes del señor Martínez.
La medida seleccionada por el señor Martínez no eliminaba todo tipo de contacto entre la señora Albino y el señor Orsini en el taller de trabajo. Tampoco incluía un elemento de supervisión que razonablemente evitara que los actos de hostigamiento sexual se repitieran. Según los hechos probados de este caso, la medida seleccionada por el señor Martínez no contenía dicho elemento; por el contrario, éste *482 no supervisó de forma efectiva la situación entre ambos empleados.
El señor Martínez no habló con la señora Albino, con el supervisor de ésta —el señor Otero— o con el propio señor Orsini para verificar si había ocurrido otro acto de hostigamiento sexual. Sabiendo éste que el señor Orsini y la señora Albino necesariamente se verían personalmente el día que el señor Orsini visitó la tienda de Corozal por órdenes suyas, el señor Martínez no hizo esfuerzo alguno para verificar si la visita había marchado libre de hostigamiento sexual. Tampoco verificó si el señor Orsini había cumplido con las instrucciones que el propio señor Martínez había impartido. Cuando el señor Otero le informó que había visto a la señora Albino riéndose en una conversación por teléfono con el señor Orsini, el señor Martínez no investigó si el señor Orsini había violado las instrucciones específicas de no llamar a la tienda de Corozal. En fin, el señor Martínez no continuó con la investigación luego de reunirse con el señor Orsini, no se cercioró del cumplimiento del señor Orsini con sus instrucciones ni verificó si éste estaba haciendo llamadas hostigadoras a la tienda de Corozal, o si la señora Albino y el señor Orsini habían tenido algún tipo de contacto que culminara en un acto de hostigamiento sexual.
Esta falta de supervisión e indiferencia tuvo como resultado que para fines de noviembre de 1996, el señor Orsini comenzara a hacer llamadas hostigadoras a la señora Albino y que durante una visita que hizo a la tienda de Corozal por órdenes de su patrono, hostigara a la recurrida, pegándosele al cuerpo y tratando de darle un beso. Aunque la recurrencia de una conducta hostigadoras no es determinante de la razonabilidad de una medida correctiva seleccionada por el patrono, ciertamente es un factor importante que debemos tomar en consideration.(12)
Cuando el patrono selecciona una acción dirigida *483 a corregir actos de hostigamiento sexual entre empleados, debe notificar de ello tanto al empleado hostigador como a su víctima, especificándoles la acción seleccionada.(13) Ello es particularmente importante cuando el hostigador permanece en el taller de trabajo, pues es la única manera de poner a la víctima en conocimiento de las medidas que su patrono ha adoptado para solucionar el problema. En este caso, el señor Martínez no notificó a la señora Albino sobre la medida correctiva seleccionada.
Hemos visto que tanto el supervisor de la señora Albino como su patrono, el señor Martínez, tomaron una acción inmediata ante la queja presentada por la recurrida. No hubo demora irrazonable por parte del señor Otero en notificarle a su patrono sobre la queja presentada por la señora Albino, como tampoco el señor Martínez demoró irrazonablemente en dar inicio a una investigación y tomar una acción correctiva, según lo requiere el propio manual de la empresa. Sin embargo, la acción correctiva seleccionada por el patrono no podía, razonablemente, evitar de forma efectiva que los actos de hostigamiento sexual se repitieran. La acción seleccionada por el patrono no cumplió con las exigencias del manual de la empresa, no fue notificada a la señora Albino, no eliminaba todo tipo de contacto entre la señora Albino y el señor Orsini en el taller de trabajo, y no contenía un elemento efectivo de supervisión que evitara la repetición de un acto de hostigamiento sexual entre ambos empleados. Estos no son requisitos onerosos para un patrono que ha sido notificado sobre los actos de hostigamiento sexual y tiene la obligación de supervisar para que sus empleados no incurran en dicha conducta ilegal.
La parte peticionaria alega que, a base de la conducta de la señora Albino, el señor Martínez no tenía otra opción que concluir que el hostigamiento sexual había ce *484 sado y que había cumplido con su responsabilidad. No tiene razón. El patrono no puede incumplir con su responsabilidad afirmativa de evitar que los actos ilegales vuelvan a ocurrir, amparándose en que el comportamiento de la víctima no demuestra de forma evidente que los actos de hostigamiento sexual hayan continuado. Aunque el Tribunal de Primera Instancia creyó el testimonio del señor Orsini, en cuanto a que fue invitado al cumpleaños del hijo de la señora Albino, al igual que el señor Martínez, ese hecho, de por sí, no demuestra que el hostigamiento sexual hubiera cesado.(14) Tampoco es prueba de ello que en una ocasión la señora Albino se riera durante una llamada telefónica con el señor Orsini. Ante la aparente conducta ambigua de la señora Albino, el señor Martínez estaba obligado a investigar si el hostigamiento sexual había continuado, en lugar de presumir que había cesado. Por lo tanto, la conducta de la señora Albino no liberó a su patrono de la responsabilidad. Es importante tomar en consideración también que el señor Martínez incumplió con varios de los deberes continuos que le impone la Ley Núm. 17, supra. La empresa tenía una política contra el hostigamiento sexual en el empleo y había establecido un procedimiento adecuado y efectivo para atender querellas sobre hostigamiento sexual en el Manual de Normas y Procedimientos de la tienda “Nineteen Ninety Five”. Sin embargo, el señor Martínez no utilizó los métodos necesarios para crear conciencia sobre el problema y dar a conocer la política de la compañía; tampoco dio suficiente publicidad en el lugar de trabajo a los derechos y las protecciones que cobijaban a sus empleados. Prueba de este incumplimiento es que durante el adiestramiento de la señora Albino no se le entregó el manual ni se discutió con ella su contenido, no se le orientó para que, como gerente, discutiera la información con sus empleados, y en la tienda de Corozal tampoco había cartelones que comunicaran el texto del manual.
*485 La parte peticionaria alega que la sentencia del tribunal apelativo no está sustentada por las determinaciones de hechos del Tribunal de Primera Instancia. No tiene razón. Abase de todas las circunstancias particulares de este caso, concluimos que el señor Martínez, como presidente de la corporación demandada y peticionaria Angel Martínez, Inc., tomó una acción inmediata, pero no apropiada, para corregir los actos de hostigamiento sexual del señor Orsini contra la señora Albino. Al incurrir en esta omisión, la parte peticionaria es responsable por los actos de hostigamiento sexual ocurridos entre sus empleados y los daños y perjuicios que a causa de éstos sufrió la parte recurrida. 29 L.P.R.A. sec. 155e. Por lo tanto, la sentencia del anterior Tribunal de Circuito de Apelaciones está sustentada por las determinaciones de hechos del Tribunal de Primera Instancia.
La parte peticionaria arguye, además, que la recurrida tenía la obligación de notificarle al señor Martínez que el hostigamiento sexual por parte del señor Orsini se había reanudado en noviembre de 1996. Ya que ha quedado establecida la responsabilidad del patrono por no tomar una acción apropiada ante los actos de hostigamiento sexual del señor Orsini, no es necesario discutir esta alegación.
La parte peticionaria también alega que el Tribunal de Primera Instancia no estableció un nexo causal entre los actos de hostigamiento sexual del señor Orsini y los daños sufridos por la recurrida. Nuevamente, no tiene razón. El Tribunal de Primera Instancia determinó que, como consecuencia del hostigamiento sexual sufrido en el empleo, la señora Albino se sentía insegura, ansiosa, nerviosa, rebajó de peso y se veía demacrada; que la relación de la señora Albino con su familia se perjudicó, ya que ésta dejó de atender a sus hijos, los quehaceres diarios del hogar y su relación matrimonial, pues se mostraba agresiva y no tenía relaciones íntimas con su esposo; que en noviembre de 1996, el esposo de la señora Albino abandonó su hogar a causa de esta situación y que regresó para darle apoyo a su *486 esposa cuando ella le contó sobre el hostigamiento sexual que sufría en el empleo.
El tribunal determinó, además, que la señora Albino padece de una depresión severa mayor, que muestra como síntomas un estado deprimido prolongado, la pérdida de interés y de concentración, fatiga, dificultad para dormir, lentitud en los movimientos motores, llanto recurrente e ideación suicida.(15) También determinó que la condición de la señora Albino es agravada por su problema ocupacional, el tener que acudir al tribunal, los problemas que tiene con su esposo a causa del hostigamiento sexual, el hecho de que su madre tuvo que hacerse cargo de sus hijos y los problemas económicos que ha tenido que enfrentar.(16) Estas determinaciones de hechos demuestran que los actos de hostigamiento sexual del señor Orsini fueron la causa de los daños sufridos y probados por la recurrida.
Finalmente, la parte peticionaria alega que la cuantía por daños concedida por el Tribunal de Primera *487 Instancia es exagerada. Reiteradamente hemos establecido que, en la difícil y angustiosa función de la estimación de daños, los tribunales de primera instancia están en una mejor posición que los tribunales apelativos debido a su contacto directo con la prueba. Por esta razón, este Tribunal se abstendrá de intervenir con la apreciación de la prueba y la determinación de los daños que un tribunal de instancia haya emitido, a menos que las cuantías concedidas sean ridiculamente bajas o exageradamente altas. Rodríguez Cancel v. A.E.E., 116 D.P.R. 443, 451 (1985). Véanse, además: Elba A.B.M. v. U.P.R., 125 D.P.R. 294, 327 (1990); S.L.G. Rodríguez v. Nationwide, 156 D.P.R. 614 (2002).
Sin embargo, en cuanto a la prueba pericial y documental, estamos en igual situación que los foros de instancia y tenemos la facultad de adoptar nuestro propio criterio respecto a ésta. Díaz García v. Aponte Aponte, 125 D.P.R. 1, 13 (1989). En este caso, la prueba pericial presentada por la señora Albino sustenta las determinaciones de daños hechas por el Tribunal de Primera Instancia. La parte peticionaria no presentó prueba pericial.
La parte que solicita a este Tribunal que se modifique una cuantía concedida en daños por el tribunal de instancia, tiene la obligación de demostrar la existencia de circunstancias que justifiquen dicha modificación. Rodríguez Cancel v. A.E.E., supra, págs. 451-452. En este caso, como bien resolvió el anterior Tribunal de Circuito de Apelaciones, la parte peticionaria no presentó evidencia que refutara la prueba presentada por la señora Albino. Su argumento en alzada se limitó a alegar la ausencia de un nexo causal entre los actos de hostigamiento y los daños que el tribunal encontró probados y, en la alternativa, la naturaleza excesiva de los daños. Meras alegaciones no son suficientes para mover nuestra facultad modificadora.
En este caso, el Tribunal de Primera Instancia determinó que los daños sufridos por la señora Albino a causa del hostigamiento sexual ascendían a un total de $75,000. *488 Según la sanción establecida en el Art. 11 de la Ley Núm. 17, supra, los codemandados son responsables por una suma igual al doble del importe de daños sufridos. 29 L.P.R.A. sec. 155j. A base de los daños que el Tribunal de Primera Instancia estimó probados, de la prueba pericial presentada por la parte demandante y que la parte peticionaria no demostró la existencia de circunstancias que justifiquen la modificación de la cuantía, concluimos que la cuantía otorgada por el Tribunal de Primera Instancia no es exageradamente alta y que, por lo tanto, no debe ser modificada.
IV
Por todo lo anterior, confirmamos la sentencia del anterior Tribunal de Circuito de Apelaciones, en cuanto a que la conducta del señor Orsini constituyó hostigamiento sexual en el empleo, que el señor Martínez, como presidente de la corporación peticionaria Angel Martínez, Inc., no tomó una acción apropiada para corregir la situación y que tanto el señor Orsini como la corporación peticionaria son responsables solidariamente por los daños y perjuicios sufridos por la recurrida.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Fuster Berlingeri concurrió con una opinión escrita. El Juez Asociado Señor Rivera Pérez disintió con una opinión escrita. El Juez Asociado Rebollo López no intervino.

 En la exposición narrativa de la prueba estipulada se explican las instrucciones que el Sr. Ángel Martínez le había proporcionado a su secretaria, la Sra. Sonia Cruz:
[Á]ngel le dio instrucciones para que se hiciera cargo de los asuntos de la tienda de Corozal; le dijo que todo lo que fuera cuestión de pedido de mercancía o nómina que tratara ella de coger siempre las llamadas; cosas que no tuvieran que ver con contabilidad era el trabajo de Orsini y él tenía que coger ese trabajo. Ella atendía el pedido de mercancía y nómina, el trabajo que no fuera de contabilidad, este trabajo era de Orsini. Ella entiende que [Á]ngel le indicó que no cogiera asuntos de contabilidad; el no le dio ninguna explicación y ella tampoco se la pidió. Esto era para la tienda de Corozal, la cual ella iba a atender y los números eran asunto de Orsini. [Á]ngel era el que atendía los problemas de los empleados. En ese momento él no le dijo que había problemas con empleados. [ÁJngel le dijo que cogiera las llamadas de Corozal, pedidos de mercancía, nóminas, todo lo relacionado a Corozal, pero los números, si Orsini estaba los tenía que coger él. Esa[s] fueron sus instrucciones; los números los cogía Orsini.” Apéndice de la Petición de certiorari, Exposición Narrativa de la Prueba Estipulada, págs. 31-32.

 También, según la exposición narrativa de la prueba estipulada, la señora Albino negó haber invitado al señor Orsini a actividades familiares en su casa. Apéndice de la Petición de certiorari, Exposición Narrativa de la Prueba Estipulada, pág. 8.

 El Art. 2 de La Ley Núm. 17 de 22 de abril de 1988 (29 L.P.R.A. sec. 155a) define los términos empleado, patrono, persona y supervisor de la manera siguiente:
“(1) Empleado.—Significa toda persona que trabaja para un patrono y que *473 reciba compensación por ello o todo aspirante a empleo. Para efecto [s] de la protección que se confiere mediante las sees. 155 a 155Z de este título, el término empleado se interpretará en la forma más amplia posible.
“(2) Patrono.—Significa toda persona natural o jurídica de cualquier índole, el Gobierno del Estado Libre Asociado de Puerto Rico, incluyendo cada una de sus tres Ramas y sus instrumentalidades o corporaciones públicas, los gobiernos municipales y cualquiera de sus instrumentalidades o corporaciones municipales, que con ánimo de lucro o sin él, emplee personas mediante cualquier clase de compensación y sus agentes y supervisores. Incluye, además, las organizaciones obreras y otras organizaciones, grupos o asociaciones en las cuales participan empleados con el propósito de gestionar con los patronos sobre los términos y condiciones de empleo, así como las agencias de empleo.
“(3) Persona.—Significa persona natural o jurídica.
“(4) Supervisor.-—Significa toda persona que ejerce algún control o cuya recomendación sea considerada para la contratación, clasificación, despido, ascenso, traslado, fijación de compensación o sobre el horario, lugar o condiciones de trabajo o sobre tareas o funciones que desempeña o pueda desempeñar un empleado o grupo de empleados o sobre cualesquiera otros términos o condiciones de empleo, o cualquier persona que día a día lleve a cabo tareas de supervisión.”

 El Tribunal Supremo de Estados Unidos ha establecido el siguiente estándar de responsabilidad patronal al amparo del Título VII de la Ley de Derechos Civiles de 1964 (42 U.S.C.A. sec. 2000e et seq.), en aquellos casos donde los actos de hostigamiento sexual son ejecutados por supervisores en el empleo:
“An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.” (Énfasis suplido.) Faragher v. Boca Raton, 524 U.S. 775, 807 (1998).

 El estándar de responsabilidad patronal al amparo del Título VTI de la Ley de Derechos Civiles de 1964, supra, en los casos donde los actos de hostigamiento sexual ocurren entre empleados es el siguiente:
“With respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action.” (Énfasis suplido.) 29 CFR sec. 1604. lid.

 Véase, además, Henson v. City of Dundee, 682 F.2d 897, 905 (11mo Cir. 1982).

 Véanse, además: Star v. West, 237 F.3d 1036, 1038 (9no Cir. 2001); E.E.O.C. v. Wyeth, 302 F. Supp. 2d 1041, 1068 (N.D. Iowa 2004).

 Véanse: Yamaguchi v. U.S. Dept. of the Air Force, 109 F.3d 1475, 1483 (9no Cir. 1997); Fuller v. City of Oakland, Cal., 47 F.3d 1522, 1528 (9no Cir. 1995).

 Véase, además, Henson v. City of Dundee, supra.

 Véanse: Yamaguchi v. U.S. Dept. of the Air Force, supra; Fuller v. City of Oakland, Cal., supra; Star v. West, supra; E.E.O.C. v. Wyeth, supra.

 Las instrucciones surgen del testimonio de la secretaria del señor Martínez antes citado. Véase esc. 1 de esta opinión.

 Véanse: Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 676 (10mo Cir. 1998); Stuart v. General Motors Corp., 217 F.3d 621, 633 (8vo Cir. 2000).

 Véase Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors, Equal Employment Opportunity Commission Enforcement, Guide to Employment Law and Regulation, 3 GELR Sec. 73:12.

 La señora Albino impugna esta determinación de hechos en el alegato presentado ante este Tribunal. Alegato de la recurrida, pág. 17. Véase también el escolio 2 de esta opinión.

 En la exposición narrativa de la prueba estipulada la Dra. Ada Lizzie Delgado Mateo explica:
“Para llegar al diagnóstico de depresión mayor severa hay que tener un número de síntomas específicos y en este caso, en dos semanas continuas, la paciente de este caso o cualquier paciente debe reflejar por lo menos cinco (5) de los siguientes síntomas: estado de depresión prolongada, continua de por lo menos dos (2) semanas; pérdida de interés en sus actividades normales; pérdida de concentración; fatiga; retardación sicomotora; dificultad para dormir; llanto frecuente; pensamientos suicidas.” Exposición Narrativa de la Prueba Estipulada, págs. 11-12.

 Los comentarios del informe pericial de la Dra. Ada Lizzie Delgado Mateo indican lo siguiente:
“Se considera que la situación de hostigamiento sexual que alega la Sra. Albino que sufrió en su trabajo y la cadena de eventos traumáticos a los que ha estado expuesta desde entonces (en su trabajo, en su vida cotidiana familiar-marital y económica, así como la exposición a un proceso legal que por su naturaleza resulta embarazoso para la paciente relatar una y otra vez lo ocurrido) han provocado un deterioro progresivo de su condición emocional.” Informe psiquiátrico, págs. 6-7.
En la exposición narrativa de la prueba estipulada la Dra. Ada Lizzie Delgado Mateo explica:
“Aunque Ada no esté físicamente en el trab[a]jo, la situación continúa porque las 24 horas de su vida todos los días a partir de su situación, se siguió planteando el problema que ella tuvo en el trabajo, ya fuera por la vía legal, por su esposo o por el tratamiento. En el Fondo la está tratando un siquiatra y ella tiene que ventilar todo lo que ocurrió en ese trabajo. Aunque no esté físicamente en el trabajo, el extresor [sic] está ahí.” Apéndice de la Petición de certiorari, Exposición Narrativa de la Prueba Estipulada, pág. 16.